**Bob BULLOCK, Comptroller of Public Accounts of the State of Texas**

v.

**STATISTICAL TABULATING CORPORATION.**

No. B–6209.

Supreme Court of Texas.

March 16, 1977.

Rehearing Denied April 27, 1977.

John L. Hill, Atty. Gen., Gilbert J. Bernal, Jr., Asst. Atty. Gen., Austin, for petitioner.

Donald F. Nobles, Austin, for respondent.

GREENHILL, Chief Justice.

This is a sales tax case brought by Statistical Tabulating Corporation [Plaintiff] to recover $20,800.47 paid under a deficiency determination made by then Comptroller of Public Accounts, Robert S. Calvert. Bob Bullock is successor in office to Robert S. Calvert and is referred to herein as the Comptroller.

The sole question before us requires that we determine whether a certain aspect of Plaintiff's business involves a "sale of tangible personal property at retail," such that a sales tax is due under the "Sales, Excise and Use Tax," contained in the Revised Civil Statutes of Texas, Title 122A, Taxation-General, Article 20.01 and following.

References herein are to particular articles of Taxation-General.[1]

Plaintiff, Statistical Tabulating, paid under protest the taxes assessed by the Comptroller. Administrative remedies were exhausted when the Comptroller issued a Notice of Disallowance of Claim for Refund. Statistical Tabulating then brought their suit against the Comptroller for refund pursuant to Article 1.05 of the above statute. The trial court, after a trial without jury, rendered judgment for the Comptroller; i. e., that the transaction was taxable. The Court of Civil Appeals, finding that Plaintiff's business activity did *not* constitute a sale, reversed the judgment of the trial court and rendered judgment for the Plaintiff; i. e., that the taxes paid be recovered. 538 S.W.2d 259, Tex.Civ.App.

The particular portions of the statute to be construed are in Section K of Article 20.01. They read:

(K)(1)(a) "Sale" means and includes any transfer of title or possession . . . in any manner or by any means whatsoever, of *tangible personal property* for a consideration.

(K)(2)(a) "Sale" includes the producing, fabrication, processing, printing or imprinting of tangible personal property for a consideration *for customers who furnish, either directly or indirectly, the materials used* in the producing, fabricating . . . .

The tax statute includes both a general definition [the first one above] and a list of situations specifically included in the definition of "sale." [See the second definition above.] We affirm the holding of the Court of Civil Appeals. In so doing, we apply the "essence of the transaction" test applicable under the general statutory definition of "sale."

The facts are uncontested. Plaintiff company is engaged in various aspects of data processing. The allegedly taxable transaction occurs in the following manner. A customer brings raw data, i. e., business records, invoices, and the like, to Plaintiff. It translates or transfers the data into a code which a computer can read and which in this instance, is represented by holes punched in a particular order on data processing cards. The coded data may also be transmitted by tapes or by telephone in addition to cards. Key punch cards are here delivered to the customer with an instruction sheet for a charge referred to in the Act as consideration.

Plaintiff's employees make this transfer or translation of data on a key punch machine. The operation of the machine is similar to the operation of a typewriter or typeset machine. The key punch operator "types" and thereby transfers the data onto the cards in accordance with an instruction sheet prepared either by the customer or by Plaintiff following the customer's directions. The instruction sheet contains 80 columns as does each data processing card and provides a code for the translation and for the "reading" of the cards thereafter by the customer.

After receiving the cards, the customer programs his computer in accordance with the instruction sheet. The cards are read by the computer; and the information retained in the "memory" of the machine, is permanently available to the customer on print-out sheets. The cards have no further use.

Plaintiff supplies the cards used in the transaction and pays a sales tax when it buys the cards from a distributor. Customers are billed by the Plaintiff on either an hourly labor rate or upon a flat rate per one thousand cards. There is no separate charge to the customer for the cards. Except in a minimal sense, there is no charge for the cards; the charge is for the transfer or translation of the data on to the cards.

The law places a tax on the receipts from the sale at retail of all "tangible personal

1. These Revised Civil Statutes are codified by Vernon in its Texas Civil Statutes Annotated as V.A.T.S. Tax.-Gen., article 20.01 et seq. The pertinent provisions are set out in footnote 2. Emphases are added and ours unless otherwise indicated.

property." [2] As stated above, we must look first to the general definition of "sale" found in Article 20.01(K)(1)(a) to determine whether this is a sale of tangible personal property. Tangible personal property is defined in the statute as "personal property which may be seen, weighed, measured, felt or touched or which is in any other manner perceptible to the senses."

In *Williams and Lee Scouting Service Inc. v. Calvert*, 452 S.W.2d 789 (Tex.Civ. App., 1970, writ ref'd), this Court indicated approval of the test used by the Court of Civil Appeals to determine whether a transaction is a sale. It said that, "The basic question here is what is being sold? . . . The law places a tax on 'tangible personal property.'"

■ If the object or the essence of the sale is not *tangible* personal property but *intangible* property then the transaction is not taxable under *any* definition of "sale."

■ We agree with the Plaintiff's contention that the true object of this transaction is not the data processing *card* as contended by the Comptroller, but the purchase of *coded* or *processed data*, an intangible.

The customer brings in raw data which is conceded by both parties to be an intangible item, but perceptible to humans. The customer then buys Plaintiff's capabilities in effecting a translation of the data such that it becomes perceptible to a computer. The essence of the transaction for the customer is an intangible product, coded data, and Plaintiff's capabilities in making the translation or coding. The coded data could be transmitted from the Plaintiff's key punch machine to customer's computer in several forms, i. e., tapes and telephones, as well as cards.

In *Williams and Lee Scouting Service Inc. v. Calvert, supra,* the court found that the *object of the transaction* for the plaintiff's subscribing customers was the scouting service provided by plaintiff. Current statistical data on oil and gas well production was continuously. gathered in the field by Williams and Lee Scouting Service employees. The data was compiled and mailed to subscribing customers in regular reports duplicated by offset printing at the plaintiff's office. The Comptroller attempted to tax the whole transaction because a tangible item, the printed report, changed hands.

In the transaction before this Court, Plaintiff's customers, like the customers in *Williams and Lee Scouting,* are desirous of something beyond the tangible object involved in the transaction. In this case, the object of the Plaintiff's customers is to obtain a great deal more than the key punch cards. As in *Williams and Lee Scouting,* the information could have been transformed into several forms. While this transaction is closer to just printing alone than the transaction in *Williams and Lee Scouting,* the element of *service* here is still the "essence of the transaction."

---

2. The pertinent parts of the article are:

Art. 20.02

There is hereby imposed a limited sales tax at the rate of three and one-fourth per cent (3¼%) on the receipts from the sale at retail of all taxable items within this State.

Art. 20.01(W)

Taxable Items. "Taxable Items" means tangible personal property.

Art. 20.01(P)

Tangible Personal Property. "Tangible Personal Property" means personal property which may be seen, weighed, measured, felt or touched, or which is in any other manner perceptible to the senses.

Art. 20.01(D)

Receipts. (1) "Receipts" means the total amount of the sale or lease or rental price . . . of the retail sales of taxable items by retailers, . . . without any deduction on account of any of the following: . . . (b) the cost of the materials used, labor or services costs, interest paid, losses or other expenses.

Art. 20.01(K)

Sale.

(1)(a) "Sale" means and includes any transfer of title or possession . . . in any manner or by any means whatsoever, of *tangible personal property* for a consideration.

    \*   \*   \*   \*   \*   \*

(2) "Sale" includes (a) the producing, fabrication, processing, printing or imprinting of tangible personal property for a consideration *for consumers who furnish, either directly or indirectly, the materials used* in the producing, fabricating, processing, printing or imprinting.