**GEOMAP COMPANY, Appellant,**

v.

**Bob BULLOCK, Comptroller of Public Accounts, et al., Appellees.**

**No. 14323.**

Court of Appeals of Texas, Austin.

May 8, 1985.

Rehearing Denied June 5, 1985.

Arch M. Skelton, Ray G. Besing & Associates, Dallas, for appellant.

Jim Mattox, Atty. Gen., Sammie K. Glasco, Asst. Atty. Gen., Austin, for appellees.

Before POWERS, EARL W. SMITH and CARROLL, JJ.

CARROLL, Justice.

Geomap appeals from a take nothing judgment in its suit to recover taxes paid to the Comptroller's office under protest. We will reverse the judgment of the trial court and render judgment that Geomap recover the full amount of tax, penalty and interest in the amount of $22,380.39 paid under protest, in addition to interest accrued thereon from the date of payment under protest to the date of repayment by the State.

Geomap is a Texas corporation engaged in the business of selling its interpretations of geological data to the oil and gas industry. Geomap's interpretations are available on a subscription basis only.

An initial set agreement subscription gives the subscriber access to Geomap's library which contains subsurface maps of all areas, electric log files,[1] and scout cards.[2] Additionally, Geomap's interpretations of the locations and contours of subsurface rock formations and other well data are reduced by Geomap onto subsurface maps. Such an initial set agreement entitles the subscriber to only one set of subsurface maps.

The taxing authority concedes that Geomap's initial set agreement is not taxable because it is intermingled with services. Under the initial set agreement, the subscriber receives up-dated information on a monthly basis to supplement the information depicted on the map. The map itself is replaced on a three, four or six month basis, depending on the contract. The initial set agreement provides that the map supplied to the subscriber under the contract is the property of Geomap and must be returned when new prints are delivered or when the contract is terminated.

To obtain an additional set of subsurface maps, a client must enter into a separate contract with Geomap called an "extra set

---

**1.** An electric log is a recording made from instruments lowered into the bore hole after a well is drilled. The instruments can measure anything from rock density to the time it takes a sonic signal to travel through rock.

**2.** Scout cards are primary sources of information obtained by field persons on each well drilled detailing where a well was drilled, who drilled it, the date started and similar information.

agreement." A client must subscribe to the initial set agreement in order to obtain the extra set subscription.

The extra set agreement is essentially the same as the initial set agreement. However, an extra set agreement is only about ¼ the cost of an initial set agreement and does not expand the subscriber's right to the use of Geomap's library.

In 1982, the State Comptroller performed a sales tax audit on Geomap's business for the period from May 1, 1978, to February 28, 1982. This audit resulted in the Comptroller assessing sales tax, penalty and interest on additional maps delivered to Geomap customers during the audit period. Geomap was given notice of a tax deficiency determination in the amount of $22,706.53, on October 19, 1982. By letter dated March 24, 1983, Geomap paid the Comptroller the sum of $22,380.39 under protest.

The trial court concluded that Geomap's sale of extra map sets through its extra set agreements was a sale of tangible personal property pursuant to Tex. Tax Code Ann. §§ 151.005, 151.009, 151.010 and 151.051 (1982). The pertinent statutory provisions are as follows:

§ 151.005 **"Sale" or "Purchase"**

"Sale" or "purchase" means any of the following when done or performed for consideration:

(1) a transfer of title or possession of tangible personal property or the segregation of tangible personal property in contemplation of a transfer or its title or possession ...

§ 151.009 **"Tangible Personal Property"**

"Tangible personal property" means personal property that can be seen, weighed, measured, felt, or touched or that is perceptible to the senses in any other manner.

§ 151.010 **"Taxable Item"**

"Taxable item" means tangible personal property.

§ 151.051 **Sales Tax Imposed**

(a) A tax is imposed on each sale of taxable item in this state. . . .

The quoted provisions clearly provide that the sale of *tangible* personal property is taxable. Maintaining that the extra set agreements involve the sale of tangible personal property, that is, the actual subsurface maps, the Comptroller argues that the relevant statutes in this case are ambiguous and that evidence of the agency's construction of the statute is admissible and persuasive in assisting the court in the interpretation of the statutes. In the trial of the case, the Comptroller introduced evidence of its long standing policy of taxing extra copies in similar cases.

The taxpayer responds that the statutes are not ambiguous and that evidence of the agency's interpretations of the statutes is not relevant or persuasive. Additionally, the taxpayer contends that the ultimate objective of these transactions is the sale of intangible property—information, and that the maps are merely the vehicle by which the information is transmitted.

■ If the pertinent statutes are not ambiguous or of doubtful meaning, they should be construed according to their terms, and it would be inappropriate to rely on a contrary construction placed upon the statutory provisions by the agency charged with their administration. *Calvert v. Kadane*, 427 S.W.2d 605 (Tex.1968). Any ambiguity in these statutes must be resolved in favor of the taxpayer because taxing statutes must be construed strictly against the taxing authority and liberally in favor of the person or entity sought to be held. *Bullock v. Statistical Tabulating Corp.*, 549 S.W.2d 166 (Tex.1977); *Wilson Communications, Inc. v. Calvert*, 450 S.W.2d 842 (Tex.1970).

■ An established test for deciding whether a transaction is taxable is to determine the *ultimate object or the essence of the transaction*. If the object or the essence of the sale is not *tangible* personal property, but rather *intangible* property, then the transaction is not taxable under any definition of "sale." *Bullock v. Statistical Tabulating Corp., supra.*

Applying the "object or essence of the transaction" test to the extra set agreement, it is apparent that the extra maps supplied by Geomap are merely the means for transmitting geographical information to Geomap's subscribers. In this instance, the subscribers are purchasing the *information* provided by Geomap which is embodied in the subsurface map. The fact that a subscriber of an extra set agreement receives a monthly exploration report, updated maps, and must return all maps, suggests that the *essence of the transaction* in this case is an intangible product— the geologists' interpretations of the location and contours of the subsurface rock formations and other well data. *Bullock v. Statistical Tabulating Corp., supra; Wilson Communications, Inc. v. Calvert,* 450 S.W.2d 842 (Tex.1970).

Accordingly, Geomap's first and seventh points of error are sustained. We reverse the judgment of the trial court and render judgment that appellant Geomap Company receive the full amount of tax, penalty and interest in the amount of $22,380.39 paid under protest, in addition to interest accrued thereon from the date of payment under protest to the date of repayment by the State.

POWERS, J., not participating.