**COMPTROLLER OF PUBLIC ACCOUNTS of the State of Texas, Appellant,**

v.

**AUSTIN MULTIPLE LISTING SERVICE, INC., Appellee.**

**No. 14660.**

Court of Appeals of Texas, Austin.

Oct. 15, 1986.

Rehearing Denied Nov. 5, 1986.

Jim Mattox, Atty. Gen., Sammie K. Glasco, Asst. Atty. Gen., Austin, for appellant.

James M. Richardson, Babb & Hanna, Austin, for appellee.

Before SHANNON, C.J., and BRADY and CARROLL, JJ.

CARROLL, Justice.

The Comptroller's Office appeals from an adverse summary judgment ordering a sales tax refund to Austin Multiple Listing Services. We will affirm the district court's judgment.

## FACTS

Austin Multiple Listing Service [Austin Service] is a non-profit corporation whose membership is comprised of real estate brokers and agents affiliated with the Austin Board of Realtors. The corporation exists for the purpose of facilitating an exchange of information among its members regarding real estate available for sale.

Since approximately 1976, Austin Service has retained the services of Multi-List, Inc. to compile and process raw data provided by Austin Service concerning real estate currently listed for sale in the Austin area. The data is continually updated and delivered to Austin Service and its members mainly in the form of a weekly pictorial multiple listing service book. However, Multi-List, Inc. also offers this information to its subscribers by direct on-line computer service. Regardless of the amount of information actually processed, Austin Service pays Multi-List, Inc. a minimum monthly fee.

During the period of December 21, 1976 to December 22, 1980, the Comptroller's Office assessed and collected sales taxes on the transactions between Multi-List, Inc. and Austin Service totalling $79,030.96. After exhausting its administrative remedies in attempting to recoup the taxes paid, Austin Service filed suit in the district court seeking a refund. The district court granted Austin Service's motion for sum-

mary judgment, and the Comptroller now appeals.

## DISCUSSION

The question which this Court must answer is whether the transaction between Austin Service and Multi-List, Inc. involved a sale of tangible personal property pursuant to Tex.Tax Code Ann. §§ 151.005, 151.009, 151.010 and 151.051 (1982). The pertinent provisions are as follows:

§ 151.005   "Sale" or "Purchase"

"Sale" or "Purchase" means any of the following when done or performed for consideration:

(1) A transfer of title or possession of tangible personal property or the segregation of tangible personal property in contemplation of a transfer of its title or possession ...

§ 151.009   "Tangible Personal Property"

"Tangible personal property" means personal property that can be seen, weighed, measured, felt, or touched or that is perceptible to the senses in any manner.

§ 151.010   "Taxable Item"

"Taxable item" means tangible personal property.

§ 151.051   Sales Tax Imposed

(a) A tax is imposed on each sale of a taxable item in this state.

The quoted provisions clearly envision the sale of tangible personal property as a taxable event. The Comptroller's Office maintains that the transaction between Austin Service and Multi-List, Inc. was a mixed sales-service transaction, the essence of which was the printing and distribution of multiple listing books, *i.e.*, tangible items. In contrast, Austin Service contends that the transaction was not a transfer of tangible personal property, but a purchase of services only and therefore outside the scope of the taxing statute.

■ The established test for deciding whether a transaction is taxable involves determining the ultimate object or the essence of the transaction. If the object or essence of the sale is not tangible personal property, but instead concerns intangible property, such as a service, then the transaction is not taxable under any definition of sale. *Bullock v. Statistical Tabulating Corp.,* 549 S.W.2d 166, 168 (Tex.1977); *Geomap Co. v. Bullock,* 691 S.W.2d 98, 100 (Tex.App.1985, writ ref'd n.r.e.). Any ambiguity in the application of this test must be resolved in the taxpayer's favor under the rule that all taxing statutes are to be strictly construed against the taxing authority and liberally in favor of the person or entity sought to be taxed. *Bullock v. Statistical Tabulating Corp., supra,* at 169; *Wilson Communications, Inc. v. Calvert,* 450 S.W.2d 842, 844 (Tex.1970).

■ The determination of whether the essence of a transaction involves a sale of tangible property rather than a service may depend in part on the timing of the various steps in the transaction in relation to the customer's request. In this appeal, the Comptroller's Office concedes that had Multi-List, Inc. only transferred computer tapes containing the processed data which Austin Service could in turn use to personally print the multiple listing books, no taxable sale would have taken place. But whether the items actually transferred were books or computer tapes distorts the basic question. The question remains whether the ultimate object or essence of the transaction between MultiList, Inc. and Austin Service was the printing of a multiple listing book or rather the processing of real estate data. We conclude the essence of this transaction was a transfer of information.

■ Our conclusion is based on the analysis of three principal factors. First, the processed real estate data, regardless of its format, has a very short useful life once delivered to a subscriber. The nature of the real estate business involves daily changes in available real estate as the result of additions of new property, sale of listed property, withdrawal of listed property from the market, etc. It is this myriad of changes that causes us to believe Austin Service's objective in retaining Multi-List, Inc. was to obtain quick and accurate pro-

cessing of this information. This situation is similar to the situation in *Williams and Lee Scouting Service, Inc. v. Calvert*, 452 S.W.2d 789, 792 (Tex.Civ.App.1970, writ ref'd). In that opinion, the critical value of current statistical data on oil and gas production was considered evidence that appellant was performing a service of supplying information rather than merely selling the tangible item of the report itself.

Second, the information contained in the multiple listing books could have been transferred to Austin Service in a variety of forms. The fact that the information is often supplied in booklet form is not determinative since, as noted earlier, Austin Service and its members were seeking the information processed by Multi-List, Inc. and not necessarily any particular format for the information. The lack of regard for the form in which the data is finally submitted indicates that a service rather than a sale is the essence of the transaction. *Bullock v. Statistical Tabulating Corp.,* supra, at 168; *Williams and Lee Scouting Service, Inc. v. Calvert, supra,* at 792. While this transaction appears to come closer to encompassing the act of printing alone than the transactions in either *Statistical Tabulating* or *Williams and Lee Scouting,* we believe the element of service remains the "essence of the transaction."

Third, the information sought by Austin Service was compiled, processed, and managed by Multi-List, Inc. The Comptroller's Office attempts to distinguish the prior opinions of *Geomap Co. v. Bullock, supra,* and *Williams and Lee Scouting Service, Inc. v. Calvert, supra,* from the present appeal because the companies in those opinions independently formulated the information ultimately sold to their subscribers. In comparison, Multi-List, Inc. merely processed information already obtained by Austin Service. We believe that the distinction lacks merit. In *Bullock v. Statistical Tabulating Corp., supra,* information was obtained by customers in the form of raw data and then brought to Statistical Tabulating where it was translated into computer coded data in the form of keypunch cards and then remit-

ted to the customer. The court concluded that the essence of the transaction was not the furnishing of the keypunch cards themselves, but was the intangible coded data. *Bullock v. Statistical Tabulating Corp.,* 549 S.W.2d at 168. Thus, the rules applied in that case should also be applied here. As a result, we conclude that the essence of the transaction here was a service and not a sale of tangible personal property.

Judgment of the district court is affirmed.