Sharp v. Direct Resources for Print 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-94-00599-CV







John Sharp, Comptroller of Public Accounts for the State of Texas; Dan Morales,


Attorney General of the State of Texas; and Martha Whitehead, successor to


Kay Bailey Hutchison, Treasurer of the State of Texas, Appellants



v.



Direct Resources for Print, Inc. (formerly ATC Communications, Inc.), Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT


NO. 93-00796, HONORABLE B. F. COKER, JUDGE PRESIDING







 This case presents the question whether a direct mail service must pay sales tax on
the portion of its service relating to the ink-jet addressing of envelopes. Direct Resources for
Print, Inc. ("Direct Resources") brought suit to recover Texas sales tax paid under protest and to
obtain a declaration that its mailing services are not taxable under Texas law. Appellants John
Sharp, as Comptroller of Public Accounts for the State of Texas; Dan Morales, as Attorney
General of the State of Texas; and Martha Whitehead, Treasurer of the State of Texas
(collectively, the "Comptroller") appeal from that portion of the trial court's judgment granting
in part Direct Resources's motion for summary judgment and ordering them to refund the sales
tax Direct Resources paid under protest. Direct Resources cross-appeals from that portion of the
trial court's judgment granting in part the Comptroller's motion for summary judgment and
denying Direct Resources's claim for attorney's fees. We will affirm the trial court's judgment.





BACKGROUND


 Direct Resources is a Texas corporation engaged in the business of providing direct
mail services. These services include the organizing, folding, collating, inserting in envelopes,
and mailing of preprinted advertising circulars, brochures, pamphlets, and other materials. Direct
Resources addresses the envelopes to those on the mailing list by means of a machine that attaches
the address labels to the envelopes or by means of an ink-jet addressing machine that prints the
information directly on the envelopes.

 During the years at issue in this cause, a representative direct-mail job by Direct
Resources involved the following steps:

 (1) Clients furnished Direct Resources with the advertising material to be mailed,
envelopes, an address list, and any special mailing instructions.

 (2) Direct Resources then organized, folded, and inserted into envelopes the
material to be mailed.

 (3) Direct Resources sent the address list to a second entity, Houston Data
Services, which either transferred the list onto address labels or into a
machine-readable format for an ink-jet machine.

 (4) Direct Resources then had either a labeling machine cut the address labels
apart and glue them to envelopes or an ink-jet machine print the addresses on
envelopes.

 (5) After the envelopes were addressed, Direct Resources sealed, sorted,
metered, bagged, and delivered the envelopes to the post office.

 The Comptroller audited Direct Resources for sales tax compliance for the period
of October 1, 1986, through October 31, 1990, and determined it owed $39,188.60 in additional
sales tax, penalties, and interest. The Comptroller ruled that the addressing of envelopes by
means of an ink-jet machine for consideration is a taxable printing service under section
151.005(4) of the Tax Code (1) and assessed taxes relating to that portion of Direct Resources's
services during the period in issue.

 Direct Resources paid the assessed tax under protest pursuant to section 112.051
of the Tax Code. See Tex. Tax Code Ann. § 112.051 (West 1992). Direct Resources then filed
this action, requesting a tax refund, a declaration under 42 U.S.C. § 1983 and section 112.051
of the Tax Code that its direct mail service was not subject to Texas sales tax, and attorney's fees
as authorized under 42 U.S.C. § 1988. After a hearing on cross-motions for summary judgment,
the trial court rendered judgment declaring that Direct Resources's business is not a taxable
service or sale under the Tax Code's sales tax provisions and ordered the sales taxes refunded to
Direct Resources. The trial court denied Direct Resources's request for attorney's fees. By two
points of error, the Comptroller appeals the trial court's judgment granting Direct Resources a tax
refund and denying its own motion for summary judgment. (2) By two cross-points of error, Direct
Resources appeals that portion of the trial court's judgment denying its recovery of attorney's
fees.



DISCUSSION


 The Comptroller maintains that Direct Resources is liable for sales tax because it
engaged in printing or imprinting for consideration, see Tex. Tax Code Ann. § 151.005(4) (West
1992), and in word processing, see id. § 151.0101(12) (West 1992), when it sprayed addresses
in ink onto envelopes and charged its customers for the ink-jet addressing. Direct Resources
responds that it should not be liable for the sales tax paid under protest because the essence of its
transaction with its customers was a nontaxable direct-mail service rather than the printing of
envelopes for consideration.

 The parties agree that the term "printing" has no commonly understood or generally
accepted definition. Because we base our opinion on the essence-of-the-transaction doctrine, even
if the process used to address envelopes with an ink-jet machine can be characterized as a printing,
imprinting, or word processing activity, that characterization does not control the outcome of this
cause. 

 The established test for determining whether a transaction is subject to sales tax
involves the determination of the ultimate object or the essence of the transaction. Bullock v.
Statistical Tabulating Corp., 549 S.W.2d 166, 167 (Tex. 1977); Williams & Lee Scouting Serv.,
Inc. v. Calvert, 452 S.W.2d 789, 792 (Tex. Civ. App.--Austin 1970, writ ref'd); Comptroller of
Public Accounts v. Austin Multiple Listing Serv., Inc., 723 S.W.2d 163, 165 (Tex. App.--Austin
1986, no writ); First Nat'l Bank v. Bullock, 584 S.W.2d 548, 550 (Tex. Civ. App.--Austin 1979,
writ ref'd n.r.e.). The inquiry concerns what is being sold. Williams & Lee, 452 S.W.2d at 792. 
In other words, the essence of the transaction is the customer's basic purpose in entering into the
transaction. Statistical Tabulating, 549 S.W.2d at 169. In determining the object of the
transaction, many factors are relevant, and the issue must be determined on a case-by-case basis. 
Id. If the essence of the sale is not tangible personal property but instead concerns intangible
property such as a service, the transaction is not taxable under any definition of sale. Id. at 168. 
Any ambiguities in the application of the essence of the transaction test must be resolved in the
taxpayer's favor; taxing statutes must be construed strictly against the taxing authority and
liberally in favor of the entity sought to be taxed. Id. at 169; Williams & Lee, 452 S.W.2d at 793.

 In the instant cause, we must determine whether the essence of the assessed
transactions was a taxable transfer of printing for consideration or the nontaxable performance of
a direct-mail service. (3) We conclude that the essence of Direct Resources's transactions with its
customers during the years at issue was the performance of a direct-mail service; the true object
sought by Direct Resources's customers was not a finished product in the form of envelopes
addressed by an ink-jet machine but the receipt of a direct-mail service. Customers, in handing
over an address list, advertising circulars, and mailing instructions to Direct Resources, desired
something beyond the tangible printed envelopes; they sought the mailing of those envelopes and
the enclosed advertising material to the targeted recipients.

 The Comptroller contends, nevertheless, that the assessed transactions are taxable
as printing for consideration, identifying several factors it believes establish that the essence of
the assessed transactions in this cause was not a mailing service. We conclude however, that the
factors the Comptroller identifies support our conclusion that the essence of the assessed
transactions was a mailing service.

 One factor identified by the Comptroller is the availability of other nontaxable
forms in which to carry out the transaction. See Statistical Tabulating, 549 S.W.2d at 168. In
Statistical Tabulating, the taxpayer processed raw data obtained from customers by translating it
into a computer code that was punched onto key punch cards ultimately given to the customers. 
Id. at 167-68. The customers, in turn, used the punch cards to transfer the coded data into their
own computers. Id. The court noted that the coded data was transferred by means of punch cards
but could have been transferred to the customers' computers through several other forms, such
as tapes and telephones. Id. at 168; see also Williams & Lee, 452 S.W.2d at 792 (recognizing
printed reports could take other forms such as handwritten notes and telephone or telegraph
communications); Austin Multiple Listing, 723 S.W.2d at 166 (noting information contained in
printed books could have been transferred in variety of forms). This factor led to the court's
decision that the essence of the customers' transactions was not the receipt of taxable tangible
personal property in the form of coded punch cards, but the receipt of a data processing service. 
Statistical Tabulating, 549 S.W.2d at 168. Thus, the transaction was not one intended to be taxed
under sales tax provisions. Id. at 169.

 In the instant cause, the addressing component of Direct Resources's mailing
service can be accomplished not only by ink-jet printing but also by the application of mailing
labels or even handwriting or typing. (4) As in Statistical Tabulating, the availability in the instant
cause of tax-free forms to carry out the transaction in addition to the allegedly taxable form
actually used indicates that the essence of the customers' transactions was not the printing of
envelopes but the mailing of advertising materials.

 Another factor identified by the Comptroller is the length of the useful life of the
printed item. See Austin Multiple Listing, 723 S.W.2d at 165. In Austin Multiple Listing, every
week the taxpayer purchased a book containing compiled and processed raw data supplied by the
taxpayer regarding properties on the real estate market. Id. at 164. The court concluded that
regardless of its format, the processed real estate data had a very short useful life because of the
ever-changing nature of the real estate business. Id. at 165. This factor led the court to conclude
that the essence of the transaction was the rapid data-processing service provided rather than the
printed book itself. Id. at 165-66; see also Williams & Lee, 452 S.W.2d at 792 (discussing value
of timely compiled data in printed reports provided by oil and gas scouting service); Geomap Co.
v. Bullock, 691 S.W.2d 98, 101 (Tex. App.--Austin 1985, writ ref'd n.r.e.) (emphasizing that
printed maps provided were updated monthly by geological data interpretation service); cf.
Statistical Tabulating, 549 S.W.2d at 167 (noting that once data on computer punch cards was
retained in customer's computer memory, cards had no further use); First Nat'l Bank, 584 S.W.2d
at 550 (concluding essence of transaction was sale of information rather than magnetic computer
tapes because once information was transferred to appellant's computer, magnetic tape which
originally held the information lost its value or importance to appellant).

 In the instant cause, the addressing component of Direct Resources's mailing
process enables the customers' advertising circulars, once mailed, to arrive at their proper
destinations. The short useful life of the addressed envelopes, like that of the printed books in
Austin Multiple Listing, indicates that Direct Resources's customers desired something beyond
printing. The printed object is the means used to facilitate the customer's goal--in this cause, quick
and efficient mail distribution.

 The Comptroller has identified other factors that do not apply to the facts of this
case. See Williams & Lee, 452 S.W.2d at 792 (concluding essence of transaction was information
gathering service partly because printed geological reports cost $1,800 per month while additional
copies cost only $3 to $5); Geomap, 691 S.W.2d at 101 (concluding essence of transaction was
information partly because all printed maps had to be returned upon contract termination). The
out-of-state cases the Comptroller cites discuss factors similar to those identified in Texas case law
which we have addressed. See Culligan Water Conditioning of Bellflower, Inc. v. State Bd. of
Equalization, 550 P.2d 593, 599 (Cal. 1976); Sneary v. Director of Revenue, 865 S.W.2d 342,
346 (Mo. 1993); Federated Dep't Stores, Inc. v. Lindley, 456 N.E.2d 1209 (Ohio 1983).

 Citing Consolidated Freightways Corp. v. State, 735 P.2d 963, 966 (Idaho 1987),
the Comptroller additionally argues that a business's assessment of a separate charge for printed
material is clear evidence that the printed material constitutes the essence of the transaction. In
Consolidated Freightways, the producer of printed schedules sent bills itemizing the costs of
producing the schedules as well as the services required to create the schedules and other services
that were distinct and separate from schedule production. 735 P.2d at 964-65. The customer then
paid the bills, separating the cost of the printed schedules by charging it to a different expense
account than that to which the cost of the unrelated services was charged. Id. at 964-65. In
determining whether to impose a use tax on the customer for its acquisition of the printed
schedules, the court used an essence-of-the-transaction test, employing wording from an Ohio
sales tax statute to hold that a separate charge for the schedules was clear evidence that they were
not incidental to any services but were the true object of the transaction. Id. at 966-67. Thus,
the critical factor in determining the essence of the transaction was not the producer's itemization
of costs but the customer's own accounting system, which charged different expense accounts for
different aspects of the itemized bill.

 The Comptroller contends that Direct Resources charges separately according to
the type of addressing utilized, citing as evidence its auditor's worksheet, which lists the taxable
amount attributable to the addressing of envelopes by ink-jet application. The record contains no
invoices, but a Comptroller's decision in the record suggests that Direct Resources included
separate items in its customers' invoices. See Tex. Comp. Pub. Acc'ts, Hearing No. 28,170
(Aug. 20, 1992). We conclude that even if Direct Resources itemizes its charges for ink-jet
addressing on its customer's invoices, that itemization does not prove that one of those itemized
charges establishes the essence of the transaction.

 Mailing cannot be completed without addressing envelopes, but it also cannot take
place without completion of other tasks by Direct Resources. In addition to addressing envelopes,
Direct Resources organizes, folds, and inserts into envelopes the materials to be mailed, and sorts
and bags the envelopes to be mailed. Performance of the addressing component by an ink-jet
machine does not transform the essence of the transaction into printing for consideration. The
customer's desired finished product is not addressed envelopes but the receipt of advertising
materials by addressees. We conclude that printing for consideration as contemplated by section
151.005(4) of the Tax Code does not apply to a printing component of a transaction, the essence
of which is a mailing service.

 When, as in the instant cause, the trial court's order does not specify the basis or
theory upon which the motion is granted, the summary judgment must be affirmed on any
meritorious theory of recovery presented in the motion. Rogers v. Ricane Enters., Inc., 772
S.W.2d 76, 79 (Tex. 1989). Because we conclude that the essence of the transaction here was
a service and not printing for consideration, the trial court did not err in granting that part of
Direct Resources's motion for summary judgment requesting refund of tax paid under protest and
in denying the Comptroller's motion for summary judgment. We overrule both of the
Comptroller's points of error and do not address other arguments in Direct Resources's motion
that could have formed the basis of the trial court's decision.

 By two cross-points of error, Direct Resources argues that (1) the Comptroller's
arbitrary and unequal application of Texas sales tax provisions to its mail service violated its
constitutional equal protection rights subjecting the Comptroller to an action for declaratory
judgment under 42 U.S.C. § 1983 and (2) the trial court thus erred in failing to award Direct
Resources its reasonable costs and attorney's fees under 42 U.S.C. § 1988. (5) However, even
assuming that the Comptroller violated Direct Resources's constitutional equal protection rights,
Direct Resources could not bring an action for declaratory relief against the Comptroller pursuant
to § 1983. (6) The Supreme Court has recently held: "When a litigant seeks declaratory or
injunctive relief against a state tax pursuant to § 1983, . . . state courts . . . must refrain from
granting federal relief under § 1983 when there is an adequate legal remedy [under state law]." 
National Private Truck Council, Inc. v. Oklahoma Tax Comm'n, 63 U.S.L.W. 4632, 4635 (U.S.
June 19, 1995). In National Private Truck Council, the Court concluded that Oklahoma courts
could not award either declaratory or injunctive relief against state taxes under § 1983 because
it was undisputed that the petitioners already had an adequate legal remedy in the form of a tax
refund awarded under state law. Id. at 4634-35. 

 In the instant cause, the trial court awarded to Direct Resources a refund of taxes
paid under protest, declaring that for the years in question, Direct Resources's business is not a
taxable service or sale under the Tax Code's sales tax provisions. Direct Resources does not
complain that it has not received an adequate remedy under state law. We thus hold that Direct
Resources has received an adequate remedy under state law and that neither the trial court nor this
Court can grant the declaratory relief Direct Resources requested pursuant to § 1983. See id. at
4635. "It follows that when no relief can be awarded pursuant to § 1983, no attorney's fees can
be awarded under § 1988." Id. We overrule both of Direct Resources's cross-points.



CONCLUSION


 Having overruled the Comptroller's points of error and Direct Resources's cross-points of error, we affirm the judgment of the trial court.

 


 

 Marilyn Aboussie, Justice

Before Chief Justice Carroll, Justices Aboussie and Jones

Affirmed

Filed: August 16, 1995

Do Not Publish Released for Publication October 18, 1995. Tex. R. App. P. 90(c).

1.   A tax is imposed on each sale of a taxable item in the State of Texas. Tex. Tax
Code Ann. § 151.051 (West 1992). When done or performed for consideration, printing
is a sale subject to sales tax. Id. § 151.005(4). Section 151.005(4) provides:


"Sale" or "purchase" means any of the following when done or performed for
consideration: . . .


(4) the production, fabrication, processing, printing, or imprinting of tangible
personal property for consumers who directly or indirectly furnish the
materials used in the production, fabrication, processing, printing, or
imprinting; . . . .


Id. (emphasis added).
2.   We note that the trial court granted the Comptroller's motion for summary
judgment to the extent that it denied Direct Resources's claim for attorney's fees.
3.   The Comptroller initially contends that the essence-of-the-transaction doctrine is
inapplicable to this cause in which a taxable sale--printing for consideration--is bundled
with nontaxable services--other mailing tasks performed by Direct Resources. As
authority, the Comptroller cites Tax Code § 151.052(c): "When several taxable items are
sold together and at the same time, the sales tax is determined on the sum of the sales
prices of the items sold exclusive of any item the sale of which is exempted by this
chapter." Tex. Tax Code Ann. § 151.052(c) (West 1992). We conclude that the
Comptroller's argument does not preclude application of the essence-of-the-transaction
doctrine because the assessed transactions in this cause do not involve the sales of multiple
items, some of which are clearly taxable and others of which are clearly exempted from
sales tax. Rather, the parties dispute whether a component part of Direct Resources's
mail service, that of addressing envelopes with an ink-jet machine, even constitutes a
taxable sale of printing for consideration. The essence-of-the-transaction test specifically
applies to those sales tax cases in which it is initially unclear whether a transaction mixes
sales and services. See Austin Multiple Listing, 723 S.W.2d at 165.
4.   Even though a customer, rather than Direct Resources, may, at times, select the use
of the ink-jet machine to address envelopes, the customer's true object of the transaction,
the mailing of its advertising materials, does not change, as evidenced by other reasons
discussed infra. 
5.   Section 1988(b) provides: "In any action or proceeding to enforce a provision of
section[] . . . 1983 . . . of this title . . . , the court, in its discretion, may allow the
prevailing party . . . a reasonable attorney's fee as part of the costs." 42 U.S.C.
§ 1988(b) (Supp. V 1993).
6.   Section 1983 provides:


Every person who, under color of any statute, ordinance, regulation, custom,
or usage, of any State . . . subjects, or causes to be subjected, any citizen of
the United States or other person within the jurisdiction thereof to the
deprivation of any rights, privileges, or immunities secured by the
Constitution and laws, shall be liable to the party injured in an action at law,
suit in equity, or other proper proceeding for redress. . . .


42 U.S.C. § 1983 (1988).


/P>

 Having overruled the Comptroller's points of error and Direct Resources's cross-points of error, we affirm the judgment of the trial court.

 


 

 Marilyn Aboussie, Justice

Before Chief Justice Carroll, Justices Aboussie and Jones

Affirmed

Filed: August 16, 1995

Do Not Publish Released for Publication October 18, 1995. Tex. R. App. P. 90(c).

1.   A tax is imposed on each sale of a taxable item in the State of Texas. Tex. Tax
Code Ann. § 151.051 (West 1992). When done or performed for consideration, printing
is a sale subject to sales tax. Id. § 151.005(4). Section 151.005(4) provides:


"Sale" or "purchase" means any of the following when done or performed for
consideration: . . .


(4) the production, fabrication, processing, printing, or imprinting of tangible
personal property for consumers who directly or indirectly furnish the
materials used in the production, fabrication, processing, printing, or
imprinting; . . . .