# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-18-00374-CV

**Instill Corporation, Appellant**

**v.**

**Glenn Hegar, Comptroller of Public Accounts of The State of Texas; and Ken Paxton, Attorney General of The State of Texas, Appellees**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT NO. D-1-GN-16-006072, HONORABLE LORA J. LIVINGSTON, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

This is a suit for judicial review of a tax assessment levied by the Comptroller of the State of Texas. *See* Tex. Tax Code § 112.052 (establishing cause of action). Taxpayer Instill Corporation contends the Comptroller incorrectly classified certain online management solutions as "data[-]processing services" subject to sales tax rather than "proprietary information services," which are not subject to that tax. *Compare id.* § 151.0101(12) (listing data processing among taxable services), *with* 34 Tex. Admin. Code § 3.342(a)(5)(A) (Tex. Comptroller of Pub. Accounts, Information Services—Nontaxable information services). After a bench trial, the district court rendered a take-nothing final judgment against Instill. We will affirm.

## BACKGROUND

At issue are certain online management solutions Instill provided to customers in the food-service industry at various periods from 2008 through 2014. As Instill describes it, these

solutions varied by customer but typically included information on each customer's procurement, manufacturing, inventory, and sales.[1]  To create these customized solutions, Instill would obtain raw data from customers and each customer's vendors and then use its own algorithms to process and present these data in a user-friendly manner intended to "help Instill's customers run their businesses."  Instill's customers would then access the solution via a secure website.

The Comptroller conducted an audit in 2014 and concluded Instill had misclassified its solutions as "proprietary information services" exempt from Texas sales tax and that Instill owed more than $1 million in overdue taxes, penalties, and interest.  Instill disagreed with the Comptroller's conclusions but paid the disputed amount under protest and then sued for judicial review of the assessment.  *See* Tex. Tax Code § 112.051 (requiring payment as predicate to judicial review).  The district court held a bench trial and ultimately agreed with the Comptroller, holding that "Instill's services are 'data[-]processing services' as provided by Texas Tax Code § 151.0035 and [34] Texas Administrative Code § 3.330(a)(1)."  *See* 34 Tex. Admin. Code § 3.330(a)(1) (Tex. Comptroller of Pub. Accounts, Data Processing Services—Definitions).  It further held that "Instill's services are not 'information services' as provided by [34] Texas Administrative Code § 3.342(a)(1)."  *See id.* § 3.342(a)(1) (Tex. Comptroller of Pub. Accounts, Information Services—Definitions).  After the Comptroller denied its motion for rehearing, Instill sought judicial review of the Comptroller's conclusions under chapter 112 of the Tax Code.  *See* Tex. Tax Code § 112.052.  After a two-day bench trial, the district court rendered final judgment in favor of the

---

[1]  Instill refers to the services at issue by various terms and phrases, including "professional services," "management consulting reports," "reporting tools," and an "online portal."  We will use the term that appears most often in the briefs and record—"solutions"—for consistency.

2

Comptroller. On Instill's motion, the court subsequently filed a set of findings and conclusions consistent with the Comptroller's classification of Instill's solutions. Instill timely perfected this appeal.

## DISCUSSION

The State of Texas imposes sales tax on the conveyance of most information services. *See id.* § 151.0101(10). There is an exemption, however, for the provision of information services if "the information is of a proprietary nature to that client and may not be sold to others by the person who gathered or compiled the information." *See* 34 Tex. Admin. Code § 3.342(a)(5)(A) (Tex. Comptroller of Pub. Accounts, Information Services—Nontaxable information services). The State also imposes sales tax on the provision of most data-processing services, defined as "the processing of information for the purpose of compiling and producing records of transactions, maintaining information, and entering and retrieving information. " *See* Tex. Tax Code § 151.0101(12) (listing data processing among taxable services); 34 Tex. Admin. Code § 3.330(a)(1) (Tex. Comptroller of Pub. Accounts, Data Processing Services—Definitions). These data-processing services are excluded by rule from the definition of information services, *see* 34 Tex. Admin. Code § 3.342(a)(1) (Tex. Comptroller of Pub. Accounts, Information Services—Definitions), and therefore cannot fall into the exemption afforded to certain proprietary information services.

Instill contends the evidence before the district court is legally and factually insufficient to support several findings of fact and that the district court misconstrued applicable

3

statutes and regulations by classifying its solutions as data-processing services rather than proprietary information services.[2] We address these arguments in turn.

**Sufficiency of the Evidence**

Although Instill does not challenge the admission of any evidence before the district court, it contends that the record was both legally and factually insufficient to support several findings of fact. "Findings of fact in a case tried to the court have the same force and effect as a jury verdict." *GATX Terminals Corp. v. Rylander*, 78 S.W.3d 630, 633 (Tex. App.—Austin 2002, no pet.) (citing *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994); *Starcrest Tr. v. Berry*, 926 S.W.2d 343, 352 (Tex. App.—Austin 1996, no writ)). "Likewise, findings of fact are reviewable for factual and legal sufficiency according to the same standards as jury findings." *Id.* (citing *Catalina*, 881 S.W.2d at 297). Thus, to prevail on its challenge, Instill "must establish the lack of evidentiary support for these findings." *Id.* To prevail on its factual-sufficiency challenge, Instill "must demonstrate on appeal that the adverse finding is against the great weight and preponderance of the evidence." *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001) (citing *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983)). "The final test for legal sufficiency must

---

[2] Instill frames its arguments as four points of error, but we construe these, in substance, as two issues: whether sufficient evidence supports the disputed findings of fact and whether the district court correctly classified Instill's solutions as data-processing services under applicable statutes and regulations. *See Gene Hamon Ford, Inc. v. David McDavid Nissan, Inc.*, 997 S.W.2d 298, 304 n.9 (Tex. App.—Austin 1999, pet. denied) (consolidating points of error for discussion); *Niess v. State*, No. 03-11-00213-CR, 2012 WL 2383300, at *1 (Tex. App.—Austin June 21, 2012, no pet.) (mem. op., not designated for publication) ("Though Niess raises these arguments in thirteen separate points of error, for convenience we have grouped the points of error into four legal issues on appeal.").

always be whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). "In conducting our review, 'we credit evidence that supports the verdict if reasonable jurors could have done so and disregard contrary evidence unless reasonable jurors could not have done so.'" *Graham Cent. Station, Inc. v. Peña*, 442 S.W.3d 261, 263 (Tex. 2014) (citing *Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. National Dev. & Research Corp.*, 299 S.W.3d 106, 115 (Tex. 2009)).

Instill contests the following findings of fact:

8. Instill sold supply chain data management services (the "Solutions") to restaurant and food-and-beverage companies in Texas . . . during the Audit Period.

12. Pursuant to the contracts, each Customer provided or instructed their third-party suppliers to provide Instill with raw data pertaining to each Customer's business operations.

13. The raw data provided to Instill for each Solution was owned by the Customer.

14. Instill did not pay for any Customer data that it collected.

20. Pursuant to the contracts, Customers paid Instill to collect the Customers' data, reformat and aggregate the data, enter data into Instill's databases, search for data relative to Customer's desired reports, cull unnecessary data, compile data, manipulate data, store data, and back-up data.

21. The value of the Instill's service to its Customers is this reformatting, standardization, and aggregation of the Customer's raw data into an accessible, usable format.

Instill does not challenge the district court's other findings.

5

With respect to Finding 8, Instill disputes the district court's characterization of its solutions as "supply chain data management services," arguing that the district court "conflates the information service with how Instill's clients use [that] service." Instill contends, "[T]he evidence conclusively establishes that the customer—and not Instill—engages in supply chain management." It is not clear from Instill's briefs how this characterization of its solutions is material to the district court's ultimate conclusion that Instill's online solutions are taxable. To our knowledge, the phrase "supply chain management" appears nowhere in the statutes or regulations at issue here, and Instill has not identified any cases distinguishing supply-chain services from any other data-processing service or information service for the purpose of assessing sales tax. We therefore need not address the argument. *See* Tex. R. App. P. 38.1(i) (requiring appellant to provide citations to authorities); *Titan Transp., LP v. Combs*, 433 S.W.3d 625, 642 (Tex. App.—Austin 2014, pet. denied) (declining to evaluate certain facts after characterizing those facts as "immaterial" to contested conclusions).

With respect to Finding 12, Instill contends, "The customers did not provide data [to Instill]" in the manner contemplated by Rule 3.342(a)(1)'s definition of data-processing services. Instill continues, "Instead, Instill retrieved data from third parties." Similarly, Instill objects to Finding 14 in that "the evidence conclusively established that the data Instill collected did not come from [its] customers." Because "provide" is not defined by statute or regulation, we must assume the Comptroller intended to denote its ordinary meaning. *See* Tex. Gov't Code § 311.011(a). Merriam-Webster defines "provide" as "to make something available to [someone]." *See Webster's Ninth New Collegiate Dictionary* 948 (1990). Here, Instill's customers agreed by contract to work with their respective vendors to make certain raw data available to Instill to generate the solutions

6

at issue. Thus, by making the data available to Instill, its customers "provided" the requisite data for the disputed reports.

With respect to Findings 13 and 14, Instill argues that "[n]o evidence supports the raw data Instill collected from third parties [was] owned by Instill's customers." Instill continues, "To the contrary, the evidence conclusively establishes that third parties—and not Instill's customers—own their data, which they provided to Instill." Data ownership is not an element of the exemption at issue here. To the extent Instill is reiterating the substance of its challenge to Finding 12—i.e., that Instill's customers did not provide the raw data for processing—we reject that argument for the reasons already stated.

Instill challenges Finding 20 on the basis that it "incorrectly states that Instill's customers paid Instill to perform various activities relating to data," arguing that its customers "buy only the management consultant reports" but not the "data processing that Instill performs to create the reports." These assertions contradict Instill's own evidence. Instill's contracts state, "The fees set forth in this [contract] cover the Instill Data and Analysis Solution."[3] The "solution" is then defined to include the monitoring, validation, mapping, extraction, reporting, enhancement, and periodic updating of raw data. In other words, Instill's customers paid Instill to manipulate data and present it in a useful form, thereby supporting the district court's description of the solutions in Finding 20.

Instill similarly contests Finding 21 on the ground that "[t]he value of the management consulting reports to Instill's customers is the information in the reports"—not the

---

[3] The language varied by customer. References are representative of the contracts at issue.

underlying data analysis used to generate those reports. The contract language just described refutes that characterization of the transactions. Moreover, Instill's sales director attested that its solutions provide value to its clients in that Instill identifies relevant data and "then aggregates, corrects, and standardizes it" before "combin[ing] it with extensive inputs that then drive[] a feed of meaningful current information, upon which clients make managerial decisions."

To summarize, the disputed findings do not contradict the great weight or preponderance of the evidence, *see Dow Chem. Co.*, 46 S.W.3d at 242, and the record before the district court would allow a reasonable, fair-minded juror to infer the same facts, *see Wilson*, 168 S.W.3d at 827. Thus, reviewing this record under the applicable standards of review, we conclude the evidence is both factually and legally sufficient to support the disputed material findings of fact. We overrule Instill's challenge to those findings.

**Statutory Classification of Instill's Solutions**

In its second challenge, Instill contends the district court misclassified its solutions as taxable data-processing services rather than tax-exempt proprietary information services. Instill does not dispute the Comptroller's rules themselves and asks this Court to "engage in a plain[-]meaning analysis and application of the relevant Comptroller rules."

The Comptroller defines data-processing services as "the processing of information for the purpose of compiling and producing records of transactions, maintaining information, and entering and retrieving information." *See* 34 Tex. Admin. Code § 3.330(a)(1) (Tex. Comptroller of Pub. Accounts, Data Processing Services—Definitions). The Comptroller has further clarified that "processing, reformatting, or manipulating data provided by the customer is data processing and is

8

not included in the definition of information services" for the purpose of the exemption afforded to proprietary information services. *See id.* § 3.342(a)(1) (Tex. Comptroller of Pub. Accounts, Information Services—Data processing services). Statutory and regulatory construction are questions of law we review de novo based on the findings of the trial court. *See BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002) (instructing courts of appeals to review de novo any conclusions of law drawn from findings of fact); *Hegar v. Autohaus LP*, 514 S.W.3d 897, 902 (Tex. App.—Austin 2017, pet. filed) (conducting de novo review of tax statutes); *BFI Waste Sys. of N. Am., Inc. v. Martinez Envtl. Grp.*, 93 S.W.3d 570, 575 (Tex. App.—Austin 2002, pet. denied) (construing regulations "in the same manner" as statutes). "[W]hen there is vagueness, ambiguity, or room for policy determinations in a rule, we defer to the agency's interpretation unless it is plainly inconsistent with the language of the rule." *Zimmer US, Inc. v. Combs*, 368 S.W.3d 579, 583 (Tex. App.—Austin 2012, no pet.) (citing *BFI Waste Sys.*, 93 S.W.3d at 575).

When it comes to tax statutes and regulations, any exemptions are strictly construed because "they undermine equality and uniformity by placing a greater burden on some taxpaying businesses and individuals rather than placing the burden on all taxpayers equally." *North Alamo Water Supply Corp. v. Willacy Cty. Appraisal Dist.*, 804 S.W.2d 894, 899 (Tex. 1991). As a consequence, "all doubts are resolved in favor of the taxing authority." *GTE Sw. Inc. v. Combs*, No. 03-08-00561-CV, 2010 WL 2218662, at *2 (Tex. App.—Austin June 3, 2010, pet. denied) (citing *Bullock v. National Bancshares Corp.*, 584 S.W.2d 268, 272 (Tex. 1979)); *see also Southwest Royalties, Inc. v. Hegar*, 500 S.W.3d 400, 404 (Tex. 2016) (explaining that tax exemptions are narrowly construed and that taxpayer has burden to "clearly show" that exemption applies). "On the

9

other hand, the concept that a tax exemption must be 'strictly' construed 'cannot be used as an excuse to stray from reasonableness.'" *GTE Sw.*, 2010 WL 2218662, at \*2 (quoting *Sharp v. Tyler Pipe Indus., Inc.*, 919 S.W.2d 157, 161 (Tex. App.—Austin 1996, writ denied)). And "the overall scheme and intent of the legislation must not be overlooked." *Tyler Pipe Indus.*, 919 S.W.2d at 161–62 (citation omitted).

Instill contends that its solutions are properly classified as information services under Chapter, 34, Section 3.342 of the Administrative Code—and not as data-processing service under Section 3.330 of that Chapter—arguing that "Data processing is not the service Instill sells; it is a constituent component used to provide Instill's information service." But as already explained, this characterization is inconsistent with the record. As the district court determined based on the evidence before it, "Pursuant to the contracts, Customers paid Instill to collect the Customers' data, reformat and aggregate the data, enter data into Instill's databases, search for data relative to Customer's desired reports, cull unnecessary data, compile data, manipulate data, store data, and backup data." The value of this service lies in "this reformatting, standardization, and aggregation of the Customer's raw data into an accessible, usable format." In short, Instill enters into contracts to collect and manipulate data and provide that data in a user-friendly format to assist its clients with various management tasks. The solutions at issue therefore satisfy the definitions of data-processing services set forth in the applicable Rules.

Instill nevertheless describes its solutions as properly classified as "information service" under the common law's "essence of the transaction" doctrine, arguing that the essence of this transaction was the conveyance of an "online management solution" or a "consulting report,"

10

and not the provision of a data-processing service. *See Williams & Lee Scouting Serv. Inc. v. Calvert*, 452 S.W.2d 789 (Tex. App.—Austin 1970, writ ref'd) (introducing the doctrine). Courts have applied the cited doctrine to sales involving a combination of taxable and non-taxable elements to determine whether the transaction is properly subject to sales tax. *See, e.g.*, *Comptroller of Pub. Accounts v. Austin Multiple Listing Serv., Inc.*, 723 S.W.2d 163, 165 (Tex. App.—Austin 1986, no writ) (sale of tangible and intangible property); *First Nat'l Bank v. Bullock*, 584 S.W.2d 548, 550 (Tex. App.—Austin 1979, writ ref'd n.r.e.) (same). We have described the essence of a transaction as "the ultimate object" of the sale and as "the customer's basic purpose in entering into the transaction." *Sharp v. Direct Res. for Print, Inc.*, 910 S.W.2d 535, 538 (Tex. App.—Austin 1995, writ denied) (citing *Bullock v. Statistical Tabulating Corp.*, 549 S.W.2d 166, 169 (Tex. 1977) (other citations omitted)). Even assuming, for the sake of argument, the cited test is applicable to this case—a point the Comptroller contests—we would hold the "essence," "ultimate object," and "basic purpose" of the disputed transactions to be the conveyance of data-processing services for the reasons already set forth in this opinion. *See Statistical Tabulating*, 549 S.W.2d at 169 (rejecting taxpayer's attempt to characterize sale of "statistical data" as tangible based on the hard copy provided to customer); *First Nat'l Bank*, 584 S.W.2d at 550–51 (rejecting similar attempt to characterize the conveyance of software as "tangible" based on the hardware holding that software).

We find unpersuasive Instill's arguments that an adverse holding would contradict prior interpretations of the "essence of the transaction" doctrine. Instill's briefing relies heavily on an unpublished memorandum issued by our sister court in Houston. *See generally Hegar v. CheckFree Servs. Corp.*, No. 14-15-00027-CV, 2016 WL 1576414, at *5 (Tex. App.—Houston

11

[14th Dist.] Apr. 19, 2016, no pet.) (mem. op.). *CheckFree* involved a dispute between the Comptroller and CheckFree Services, a taxpayer that provided technical support to customers in the financial industry. At issue were certain "bill pay services" offered "through these banks' on-line banking services to the banks' customers." *See id.* at *1. The parties in that case—like the parties here—disagreed as to whether these services should be classified as data-processing services or information services for the purpose of sales tax calculation. *See id.* The district court concluded that these "bill pay services . . . were not taxable data processing services as defined either by the Texas Tax Code or the Comptroller's administrative rules." *See id.* (internal quotation marks omitted). Relying on the district court's findings and applying the "essence of the transaction" test, the court of appeals affirmed. Instill asks us to hold, as the *CheckFree* court did, that the disputed services are merely "facilitated by the use of computers" and not data-processing services. *See id.* at *6.

*CheckFree* is readily distinguishable from the case before this Court. In resolving that appeal in favor of the taxpayer, the Houston court emphasized the unchallenged findings of fact below and the evidence supporting those findings, which included the characterization of the disputed service as "a professional service requiring accredited or certified professionals across several areas including [automated clearing house] processing, financial crime investigation, treasury, anti-money laundering, and accounting." *Id.* at *5. The taxpayer testified that "[t]hese professionals are not a minor part of the bill pay service delivery; instead, they are the 'secret sauce' of the service." *Id.* The court of appeals summarized the findings and supporting evidence as revealing that "to the extent that CheckFree provided any [data-processing] services, they were

12

ancillary to the professional bill pay services provided by CheckFree for the bank's customers—the electronic commerce services that the bank purchased from CheckFree." *Id.* (citing *Combs v. Roark Amusement & Vending, L.P.*, 422 S.W.3d 632, 637–38 (Tex. 2013)). Here, like our sister court, we are bound by the district court's findings of fact and the evidence supporting those findings. *See id.*; *see also Peña*, 442 S.W.3d at 263. But unlike in *CheckFree*, the findings and evidence before us reveal that Instill's data processing was not "ancillary" to its provision of some other professional service. Indeed, nothing in the district court's findings suggests that Instill's customers purchased anything more than "the processing of information for the purpose of compiling and producing records of transactions, maintaining information, and entering and retrieving information." *See* 34 Tex. Admin. Code § 3.330(a)(1) (Tex. Comptroller of Pub. Accounts, Data Processing Services—Definitions). As a consequence, the district court correctly classified Instill's solutions as taxable data-processing services that do not fall within the exemption—which must be strictly construed—provided to certain proprietary information services. We overrule Instill's second issue.

## CONCLUSION

Having identified no error on the part of the district court, we affirm the final judgment rendered in favor of the Comptroller.

_____

Edward Smith, Justice

Before Chief Justice Rose, Justices Kelly and Smith

Affirmed

Filed:   May 31, 2019