OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS
JOHN CORNYN

July 14, 1999

The Honorable Carole Keeton Rylander　　　　　Opinion No. JC-0081
Comptroller of Public Accounts
Lyndon B. Johnson Building　　　　　　　　　　Re: Whether a local government must collect
111 E. 17th Street　　　　　　　　　　　　　　sales taxes on beach user fees charged pursuant to
Austin, Texas 78701　　　　　　　　　　　　　chapter 61 of the Natural Resources Code and
　　　　　　　　　　　　　　　　　　　　　　General Land Office rules　(RQ-0003)

Dear Comptroller Rylander:

Chapter 61 of the Natural Resources Code authorizes local governments to charge fees for beach parking and the use of other beach facilities and services, *see* TEX. NAT. RES. CODE ANN. § 61.011(b) (Vernon Supp. 1999), § 61.070 (Vernon 1978), and authorizes the General Land Office to adopt rules governing these fees, *see id.* §§ 61.001(1), 61.011(d)(4), 61.022(b) (Vernon Supp. 1999). Your predecessor in office asked whether local governments that charge beach parking and other fees pursuant to chapter 61 and General Land Office rules must collect and remit sales taxes on the fees. We conclude that because the legislature has specified in chapter 61 that local governments may charge these fees only to cover the costs of discharging their beach-related responsibilities, that the fees may not exceed the costs of public beach facilities and services, and that these fees may not unfairly limit public access to and use of public beaches, *see id.* § 61.011(b), the legislature did not intend for persons paying these fees to pay sales taxes on the fees. Accordingly, we conclude that these fees are not subject to sales tax under chapter 151 of the Tax Code.

Chapter 61 of the Natural Resources Code affirms and protects the public's "free and unrestricted right of ingress and egress to" beaches on the Gulf of Mexico. *See id.* § 61.011(a).[1] Since 1969, chapter 61 has recognized that local governments may assess "a reasonable fee for off-beach parking or for the use of facilities provided for the use and convenience of the public." *Id.* § 61.070 (Vernon 1978);[2] *see also* Tex. Att'y Gen. Op. No. JM-345 (1985) (concluding that inclusion of authority to impose reasonable fee for off-beach parking in chapter 61 excluded authority to

---

[1]For a discussion of the nature of the public's right of access to and use of Gulf of Mexico beaches, *see, e.g.,* *Feinman v. State*, 717 S.W.2d 106, 109, 111-12 (Tex. App.–Houston [1st Dist.] 1986, writ ref'd n.r.e.).

[2]Natural Resources Code section 61.070 derives from a 1969 amendment to the statutory predecessor to chapter 61. *See* Act of Sept. 9, 1969, 61st Leg., 2d C.S., ch. 17, § 3, 1969 Tex. Gen. Laws 128, 129.

impose fee for on-beach parking). Furthermore, in 1991, in recognition that "in order to provide and maintain public facilities and public services to enhance access to and safe and healthy use of the public beaches by the public, adequate funds are required to provide public facilities and public services," TEX. NAT. RES. CODE ANN. § 61.011(b) (Vernon Supp. 1999), section 61.011 was amended to authorize local governments that are responsible for the regulation, maintenance, and use of public beaches to charge reasonable fees "to cover the cost of discharging its responsibilities with respect to such beaches, provided such fees do not exceed the cost of such public facilities and services, and do not unfairly limit public access to and use of such beaches," *id.*[3] The Commissioner of the General Land Office is required to promulgate rules on "imposition of beach access, user, or parking fees." *Id.* § 61.011(d)(4). A local government may not impose or increase public beach access, parking, or use fees "in any manner inconsistent with the policies of Section 61.011 . . . or the rules promulgated thereunder." *Id.* § 61.022(b).

Pursuant to its rule-making authority under chapter 61, the General Land Office has promulgated rules authorizing local governments that have obtained state approval of a dune protection and beach access plan to charge beach user fees. *See* 31 TEX. ADMIN. CODE § 15.8(a) (1998). The rules define the term "beach user fee" as "[a] fee collected by a local government in order to establish and maintain beach-related services and facilities for the preservation and enhancement of access to and from and safe and healthy use of public beaches by the public." *Id.* § 15.2. For purposes of the rules, the term "beach-related services" means:

> Reasonable and necessary services and facilities directly related to the public beach which are provided to the public to ensure safe use of and access to and from the public beach, such as vehicular controls, management, and parking (including acquisition and maintenance of off-beach parking and access ways); sanitation and litter control; lifeguarding and lifesaving; beach maintenance; law enforcement; beach nourishment projects; beach/dune system education; beach/dune protection and restoration projects; providing public facilities such as restrooms, showers, lockers, equipment rentals, and picnic areas; recreational and refreshment facilities; liability insurance; and staff and personnel necessary to provide beach-related services. Beach-related services and facilities shall serve only those areas on or immediately adjacent to the public beach.

*Id.*

The General Land Office rules preclude a local government from imposing a fee "for the exercise of the public right of access to and from public beaches." *Id.* § 15.8(c)(1). Rather, fees may be charged only in exchange for services and must be reasonable: "A reasonable fee is one that

---

[3]Subsections (b) through (e) were added to section 61.011 in 1991. *See* Act of May 21, 1991, 72d Leg., R.S., ch. 295, § 5, 1991 Tex. Gen. Laws 1220, 1222.

recovers the cost of providing and maintaining beach-related services." *Id.* Local governments must deposit beach user fees in a separate bank account and may use revenues only for expenditures for beach-related services. *See id.* § 15.8(f)-(g). These rules include off-beach parking "to provide access to and from the public beach" as a beach user fee. *Id.* § 15.8(c)(1).

Your predecessor in office, noting that chapter 151 of the Tax Code, the Limited Sales, Excise, and Use Tax Act, applies to the State of Texas and its political subdivisions when they make sales that are subject to taxation, *see* Tex. Att'y Gen. Op. No. JM-987 (1988) at 4, specifically concluded that beach parking fees charged by local governments pursuant to chapter 61 of the Natural Resources Code are fees for a taxable service under chapter 151 of the Tax Code. As explained below, we conclude, based on the legislative purpose of chapter 61 of the Natural Resources Code, that beach user fees charged pursuant to chapter 61 are not subject to sales tax.

As a court has noted in a recent case regarding taxation of services under chapter 151 of the Tax Code, our main focus is the language of the relevant statutory provisions: "The primary rule of statutory construction is that a court must look to the intent of the legislature and must construe the statute so as to give effect to that intent." *Rylander v. Associated Technics Co.,* 987 S.W.2d 947, 949 (Tex. App.–Austin 1999, no. pet.). Here, we believe, the proper focus of analysis is not chapter 151 of the Tax Code, the provision governing sales tax generally, but rather chapter 61 of the Natural Resources Code, the statute specific to beach access and fees. *See* TEX. GOV'T CODE ANN. § 311.026(b) (Vernon 1998) (special provision prevails as exception over general). Based on the limitations on the amount and use of beach user fees in chapter 61, we conclude that the legislature did not intend these fees to be subject to sales tax. *See id.* § 311.023(1), (5) (in construing statute, court may consider, among other things, object sought to be obtained and consequences of a particular construction); *see also Feinman v. State,* 717 S.W.2d 106, 109 (Tex. App.–Houston [1st Dist.] 1986, writ ref'd n.r.e.) (relying on section 311.023 of the Government Code in construing nature of public beach easement under chapter 61 of the Natural Resources Code).

Chapter 61 charges local governments with the regulation and maintenance of public beaches. *See* TEX. NAT. RES. CODE ANN. §§ 61.011(b), 61.015 (Vernon Supp. 1999) (local governments charged with adopting beach access and use plans); *id.* ch. 61, subchap. C (Vernon 1978 & Supp. 1999) (beach maintenance); *id.* ch. 61, subchap. D (county regulation of traffic, litter and swimming); *see also id.* ch. 63 (dune protection). In recognition of the monetary costs associated with these responsibilities, chapter 61 authorizes a local government to charge fees "to enhance access to and safe and healthy use of the public beaches." *Id.* § 61.011(b) (Vernon Supp. 1999). Significantly, the legislature has strictly limited the amount and use of these fees. As noted above, local governments may charge these fees only to cover the costs of discharging their beach-related responsibilities. *See id.* The fees may not exceed the costs of public beach facilities and services. *See id.* Furthermore, these fees may not unfairly limit public access to and use of public beaches. *See id.* The General Land Office rules, which are consistent with chapter 61, limit a local government to charging beach user fees to finance beach-related services — services that ensure beach users' health and safety. *See* 31 TEX. ADMIN. CODE §§ 15.2, 15.8 (1998).

Under the Tax Code, the purchaser of a taxable item or service is liable to the seller for the tax as part of the sales price. *See* TEX. TAX CODE ANN. § 151.052(a)(1), (2) (Vernon 1992) (sales tax "becomes a part of the sales price" and "is a debt of the purchaser to the seller until paid"). Thus, if beach user fees were subject to sales tax, members of the public paying the fees would ultimately bear the burden of the tax. If required to collect sales taxes on beach user fees, a local government would face two choices, neither of which is consistent with the purposes of chapter 61. On the one hand, a local government could decide to increase amounts charged to the public, collecting more money than necessary to cover its beach facilities and services costs, and further burdening beach access. On the other hand, a local government could decide to maintain charges at current levels and remit a portion of its revenues to the state, thus collecting less than an amount adequate to cover its costs. Given that the legislature has specified in chapter 61 that local governments may charge these fees only to cover the costs of discharging their beach-related responsibilities, that the fees may not exceed the costs of public beach facilities and services, and that these fees may not unfairly limit public access to and use of public beaches, *see* TEX. NAT. RES. CODE ANN. § 61.011(b) (Vernon Supp. 1999), we believe that the legislature did not intend for persons paying these fees to pay sales taxes on the fees. Nor do we believe that the legislature intended to decrease the amount of monies collected by local governments, given that it expressly authorized local governments to charge these fees in recognition that adequate funds are required "in order to provide and maintain public facilities and public services to enhance access to and safe and healthy use of the public beaches by the public," *id.*

In sum, taxation of chapter 61 beach user fees under chapter 151 of the Tax Code is inconsistent with the purposes for which the legislature has authorized local governments to charge these fees. Accordingly, we conclude that beach user fees charged by local governments under chapter 61 and the General Land Office rules are not subject to sales tax.

Finally, we note that your predecessor took the position that beach parking fees charged by local governments pursuant to chapter 61 of the Natural Resources Code are subject to sales tax under section 151.0101 of the Tax Code, which specifically lists "motor vehicle parking and storage services" as a taxable service. *See* TEX. TAX CODE ANN. § 151.0101(a)(4) (Vernon 1992); *see also id.* §§ 151.010 (term "taxable item" means "tangible personal property and taxable services"), 151.051(a) (chapter 151 imposes a sales tax on each sale of a "taxable item" in this state). Noting that the General Land Office rules provide that a local government may not impose a fee "for the exercise of the public right of access to and from public beaches," 31 TEX. ADMIN. CODE § 15.8(c)(1) (1998), your predecessor concluded that beach parking fees are fees for "motor vehicle parking and storage services" under the terms of section 151.0101(a)(4).

Subsection (b) of section 151.0101 of the Tax Code provides that the Comptroller "shall have exclusive jurisdiction to interpret Subsection (a) of this section." TEX. TAX CODE ANN. § 151.0101(b) (Vernon 1992). As one court recently noted, however, "[t]he Comptroller has exclusive jurisdiction to interpret the scope of taxable services, *subject to a reasonableness standard of review. See Hammerman & Gainer, [Inc. v. Bullock,]* 791 S.W.2d [330,] 333 [(Tex. App.–Austin 1990, no writ)] (court is bound to accept Comptroller's interpretation of scope of taxable services if that interpretation

is reasonable)." *Rylander v. Associated Technics Co.*, 987 S.W.2d at 949-50 (emphasis added). "[A] court may accept the statutory construction of the Comptroller as long as the construction is reasonable and does not contradict the plain language of the statute." *Id.* For the reasons explained above, we believe that a construction of section 151.0101(a)(4) of the Tax Code that includes beach parking fees charged under chapter 61 of the Natural Resources Code within the meaning of "motor vehicle parking and storage parking services" is contrary to the intent of chapter 61 and is therefore unreasonable.

We also note that the General Land Office takes the position that beach parking fees are not fees for "motor vehicle parking and storage services," citing the "essence of the transaction" test developed by the courts to determine whether an item is subject to sales tax, as formulated in *Sharp v. Direct Resources for Print, Inc.*, 910 S.W.2d 535, 538 (Tex. App.–Austin 1995, writ denied). The "essence of the transaction" test was developed by the courts in the 1970's to distinguish between sales of intangible property, such as services, which were not taxable,[4] and sales of tangible personal property, which were taxable. *See, e.g., Bullock v. Statistical Tabulating Corp.*, 549 S.W.2d 166, 168 (Tex. 1977) (applying test to distinguish between tangible personal property and intangible property); *Williams & Lee Scouting Serv., Inc. v. Calvert*, 452 S.W.2d 789, 792 (Tex. Civ. App.–Austin 1970, writ ref'd) (applying test to distinguish between tangible personal property and a service). Although the "essence of the transaction" test has been applied more recently to transactions that mix the sale of taxable tangible personal property and nontaxable services,[5] we are not aware of any cases applying this test to distinguish between sales of nontaxable and taxable services, such as those listed in section 151.0101. We do not need to resolve whether the "essence of the transaction" test is an appropriate method to distinguish between sales of nontaxable and taxable services, however, given that we conclude that beach user fees are not subject to sales tax on the basis of chapter 61 of the Natural Resources Code.

---

[4]Services were not subject to sales tax until 1984. *See* Act of July 3, 1984, 68th Leg., 2d C.S., ch. 31, art. 7, 1984 Tex. Gen. Laws 193, 222.

[5]*See, e.g., Sharp v. Direct Resources for Print, Inc.*, 910 S.W.2d 535, 538-39 n.3 (Tex. App.–Austin 1995, writ denied); *Comptroller of Pub. Accounts v. Austin Multiple Listing Serv., Inc.*, 723 S.W.2d 163, 165 (Tex. App.–Austin 1986, no writ).

## S U M M A R Y

Beach user fees charged by a local government under chapter 61 of the Natural Resources Code and General Land Office rules, *see* 31 TEX. ADMIN. CODE §§ 15.2, 15.8 (1998), are not subject to sales tax under chapter 151 of the Tax Code.

Yours very truly,

JOHN CORNYN
Attorney General of Texas

ANDY TAYLOR
First Assistant Attorney General

CLARK KENT ERVIN
Deputy Attorney General - General Counsel

ELIZABETH ROBINSON
Chair, Opinion Committee

Prepared by Mary R. Crouter
Assistant Attorney General