TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







ON MOTION FOR REHEARING









NO. 03-01-00537-CV








GATX Terminals Corporation, Appellant


v.



Carole Keeton Rylander, Comptroller of Public Accounts of the State of Texas; and John
Cornyn, Attorney General of the State of Texas, Appellees (1)






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT


NO. 96-10815, HONORABLE W. JEANNE MEURER, JUDGE PRESIDING







 To address issues raised in the Comptroller's motion for rehearing, we withdraw our
original opinion and judgment issued April 18, 2002 and issue this opinion in its stead.

 GATX Terminals Corporation (GATX) operates two facilities on the Houston ship
channel, referred to as "tank farms," where petroleum and petrochemical products are unloaded from
transport vehicles and stored in large, steel tanks until they are ready to be loaded again for
distribution. The Comptroller assessed taxes against GATX for services performed at its Galena
Park facility during audit periods from April 1989 through August 1992, and from September 1992
through June 1996. GATX sought a redetermination of the taxes and a refund from the Comptroller. 
See Tex. Tax Code Ann. §§ 111.009, .105 (West 2001). After the Comptroller denied the request,
GATX paid the deficiency under protest and subsequently filed suit in district court seeking a refund. 
See id. §§ 112.051, .052, .151.

 The Tax Code designates "real property repair and remodeling" as a taxable service. 
Id. § 151.0101(a)(13) (West 2002). The Comptroller has implemented a rule which describes the
types of services that are subject to tax and classifies as non-taxable two activities: "maintenance"
and "new construction." See 34 Tex. Admin. Code § 3.357 (2001) (Comptroller of Public Accounts,
Labor Relating to Nonresidential Real Property Repair, Remodeling, Restoration, Maintenance, New
Construction, & Residential Property) ("Rule 3.357"). GATX argued to the Comptroller and the
district court that repainting its tanks is non-taxable maintenance, and that work performed to bring
the facility into compliance with environmental regulations is non-taxable new construction. The
district court tried the issues de novo. See Tex. Tax Code Ann. § 112.054 (West 2001).

 After awarding certain refund amounts stipulated to by the parties, the district court
denied the balance of GATX's claims for a refund. (2) GATX presents compelling arguments for why
the disputed services should not be classified as taxable repair and remodeling. After closely
reviewing the definitions set forth in the statute and in the Comptroller's rules and decisions,
however, we find that the evidence is sufficient to uphold the trial court's judgment denying the
refunds.


DISCUSSION

Standard of Review

 As the parties disagree over the appropriate standard of review, we will clarify our
level of review over this matter. Repair and remodeling services that are performed on real property
are made taxable by statute. Id. § 151.0101(a)(13) (West 2002). The Comptroller has the exclusive
jurisdiction to interpret whether services fall in this category. Id. § 151.0101(b). In this capacity,
the Comptroller has implemented Rule 3.357. GATX did not challenge the rule on the grounds that
it contravened or was otherwise inconsistent with the legislative intent as expressed in section
151.0101(a) of the tax code. Indeed, the trial court expressly found that GATX had challenged
neither the validity or application of Rule 3.357. (3) The only issue before the trial court, then, was
whether the facts of this case established that the disputed services constitute taxable repair and
remodeling as determined by the definitions promulgated in Rule 3.357.

 There being no challenge to the rule as implemented, the rule as applied depended
on findings made by the trier-of-fact. After a de novo trial of the issues, the trial court found that
GATX had not met its burden of proof to establish that the services were non-taxable activities. The
court supported its judgment with findings of fact and conclusions of law. Findings of fact in a case
tried to the court have the same force and effect as a jury verdict. Catalina v. Blasdel, 881 S.W.2d
295, 297 (Tex. 1994); Starcrest Trust v. Berry, 926 S.W.2d 343, 352 (Tex. App.--Austin 1996, no
writ). Likewise, findings of fact are reviewable for factual and legal sufficiency according to the
same standards as jury findings. Catalina, 881 S.W.2d at 297. To reach a different result, GATX
must establish the lack of evidentiary support for these findings.

 GATX conceded at oral argument that in light of the trial court's findings of fact and
conclusions of law on the controlling issues, its appeal was limited to legal and factual sufficiency
of the evidence challenges. It has also asserted, however, that this Court can determine the disputed
issues as a matter of law because the material fact findings are, in effect, conclusions of law. While
we agree with GATX that the ultimate issue--whether the services are taxable--presents a question
of law, this legal issue depends on the trier-of-fact's resolution of the underlying factual issues. 
Moreover, we reject appellant's characterization of the instant case as one requiring statutory
interpretation. As we have stated, GATX does not challenge the Comptroller's administrative rule
which, with the statute and the decisions of the Comptroller, govern this appeal.

 GATX alternatively asserts that we can decide the issues as a matter of law because
the material facts are undisputed. Contrary to GATX's assertion, the record reflects that the facts
were disputed at trial. (4) The trial court weighed the evidence presented by both sides and decided in
the Comptroller's favor. We will review the sufficiency of the evidence to support the trial court's
ultimate findings that the activities were taxable.

 At the outset, however, we must determine which party had the burden of proof
below. By statute, judicial review in a tax refund suit brought by the taxpayer is de novo. Tex. Tax
Code Ann. §§ 112.054, .154 (West 2001). The Administrative Procedure Act (APA) states that "[i]f
the manner of review authorized by law for the decision in a contested case that is the subject of
complaint is by trial de novo, the reviewing court shall try each issue of fact and law in the manner
that applies to other civil suits in this state as though there had not been an intervening agency action
or decision." Tex. Gov't Code Ann. § 2001.173 (West 2000). A taxpayer who sues for a tax refund
after an administrative hearing, then, is like a plaintiff in any other cause of action, and hence carries
the burden to establish its eligibility to a refund. See Key Western Life Ins. Co. v. State Bd. of Ins.,
350 S.W.2d 839, 846 (Tex. 1961); Attorney Gen. v. Orr, 989 S.W.2d 464, 467 (Tex. App.--Austin
1999, no pet.). 


Review by trial de novo has all the attributes of an original action in the reviewing
court. The trial court must weigh the evidence by the "preponderance of the
evidence" standard. Trial de novo has been defined as "A new trial or retrial had in
an appellate court in which the whole case is gone into as if no trial whatever had
been had in the court below." Trial de novo is not an "appeal", but is a new and
independent action.



Key Western Life, 350 S.W.2d at 846 (citations omitted). As the plaintiff below, then, GATX had
the burden of proof on all of its claims. See id.; Orr, 989 S.W.2d at 467; see also Godwin v. Aldine
Indep. Sch. Dist., 961 S.W.2d 219, 221 (Tex. App.--Houston [1st Dist.] 1997, pet. denied)
(reversing and remanding because of trial court's failure to place on taxing authorities the burden
of going forward with evidence in a suit brought against taxpayer for tax delinquency).


I.  Tank Repainting

 To prevent its steel storage tanks on the coast from rusting, GATX paints them with
a three-coat application. The environmental forces that are present on the ship channel--harsh sun,
salt, and rain--cause the paint to deteriorate and the metal to rust. Over time as the paint is exposed
to these forces, the top layer of paint wears down to expose the intermediate layer, which in turn
eventually wears down to expose the bottom layer until the steel itself is exposed. As these
intermediate layers of paint become visible, GATX can gauge how much longer the paint will remain
on a particular tank and approximately when it will need to be repainted. GATX then arranges to
have certain tanks repainted, which requires that the tanks be taken out of service.

 In the absence of Rule 3.357, one might assume that repainting the tanks meets the
common-sense definition of maintenance performed to prevent the tanks from rusting. Under that
rule, however, repainting is presumed to be a taxable activity unless the taxpayer affirmatively shows
that the repainting meets the specific requisites of maintenance as set out in the rule. 34 Tex. Admin.
Code § 3.357(b)(8). Rule 3.357 defines maintenance as follows:


For operational and functioning improvements to realty, maintenance means
scheduled, periodic work necessary to sustain or support safe, efficient, continuous
operations, or to prevent the decline, failure, lapse, or deterioration of the
improvement. Taxable real property services covered by § 3.356 of this title (relating
to Real Property Service) do not qualify as maintenance. 



Id. § 3.357 (a)(4). The rule further defines "scheduled" and "periodic." "Scheduled" work is that
which is "anticipated and designated to occur within a given time period or production level." Id.
§ 3.357(a)(4)(A). "Periodic" activity for purposes of Rule 3.357 is "ongoing or continual or at least
occurring at intervals of time or production which are generally predictable." Id. § 3.357(a)(4)(B).

 The Comptroller's previous decisions in this area have clarified both of these terms. (5) 
These decisions have held that scheduled work is arranged in advance rather than on an as-needed
basis. See Tex. Comptroller of Pub. Accounts, Taxpayer Hearing on Disputed Audit, Docket No.
28,468 (Nov. 2, 1992) (Comptroller's final decision amending audit). As-needed work does not
qualify as scheduled because it is not performed until someone directs that it be done. Id. Docket
No. 30,911. The Comptroller's administrative decisions have held that periodic service is that which
is performed in repeated cycles or at regular intervals; work that is prompted by a subjective
judgment is not periodic. Id. Docket No. 28,468. In other words, the condition that maintenance
be periodic requires the performance of some task at regular intervals, not when someone exercises
a judgment call. Id. Docket No. 30,911.

 The trial court made the following findings of fact:



 The tank repainting in issue was neither "scheduled" nor "periodic."

 GATX failed to rebut the presumption that the tank repainting was a restoration
or remodeling activity.

 The tank repainting in issue is not real property maintenance.




 As stated, GATX had the burden to prove that the services fell within an exception. 
See Orr, 989 S.W.2d at 467. As a taxpayer challenging the taxability of repainting services,
moreover, GATX had to establish that the repainting occurs as part of periodic and scheduled
maintenance. See 34 Tex. Admin. Code § 3.357(b)(8); Tex. Comptroller of Pub. Accounts,
Taxpayer Hearing on Disputed Audit, Docket No. 30,908 (July 28,1995) (final decision by the
Comptroller amending, upholding, audit). In reviewing the legal sufficiency of an adverse finding
on which the party had the burden of proof, we must first examine the record for evidence that
supports the finding, ignoring any evidence to the contrary. Sterner v. Marathon Oil Co., 767
S.W.2d 686, 690 (Tex. 1989); Holley v. Watts, 629 S.W.2d 694, 696 (Tex. 1982). We will uphold
the finding if more than a scintilla of evidence supports it. Burroughs Wellcome Co. v. Crye, 907
S.W.2d 497, 499 (Tex. 1995). More than a scintilla exists where the evidence supporting the
finding, as a whole, rises to a level that would enable reasonable people to differ in their conclusions. 
Id. at 499. If we find that no evidence supports the finding, then we must examine the entire record
to determine if the contrary proposition is established as a matter of law. Sterner, 767 S.W.2d at
690. 

 To prevail in a factual sufficiency challenge, a party who had the burden of proof at
trial must demonstrate that the adverse finding is against the great weight and preponderance of the
evidence. Croucher v. Croucher, 660 S.W.2d 55, 58 (Tex. 1983). In reviewing the finding, we must
first examine the record to determine whether there is some evidence to support the finding, and then
we determine, in light of the entire record, whether the finding is so contrary to the overwhelming
weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. See Cain
v. Bain, 709 S.W.2d 175, 176 (Tex. 1986). 


The Evidence at Trial

 Based on the evidence GATX presented at trial, the trial court failed to find that the
tank repainting was scheduled or periodic. GATX challenges this failure to find and points to the
testimony of Alan Muyskens, who was the regional engineering manager for the GATX facility in
Houston, (6) to support its position that its tank repainting activities were both scheduled and periodic. 
Mr. Muyskens testified that the average lifetime for a paint job on one of the tanks in the Gulf Coast
area is about ten years. Based on the average lifetime of a paint job, Mr. Muyskens concluded that
the GATX tanks would need to be repainted about every ten years. He estimated that the tanks,
which each have a useful life of up to sixty years, are painted multiple times during the period they
are in service. GATX argues that Mr. Muyskens's testimony establishes that the tank repainting
services are periodic.

 It also relies on Mr. Muyskens's testimony to show that the painting is scheduled. 
The witness testified that the repainting activity is a "formal budgeted scheduled maintenance
program." The company schedules a certain number of tanks for painting at the beginning of each
year. Once the initial list of tanks is determined, GATX considers various factors to decide whether
it is feasible to take a certain tank out of service for repainting: (1) the contents of the tank, (2) who
the leasing customer of the tank is, and (3) how the customer is utilizing the particular tank. GATX
argues that the repainting is "scheduled" because it is anticipated that it will occur approximately
every ten years and because some repainting is included on the tank farm's maintenance schedule
at the beginning of each year.

 The Comptroller counters that the evidence is legally and factually sufficient to
support the court's failure to find the tank repainting was scheduled or periodic and to uphold the
affirmative finding that it was not. The Comptroller points out that the timing of repainting any
particular tank is contingent upon various factors other than the condition of the paint. At trial, Mr.
Muyskens testified that other factors, such as the customer's contract, affect the company's decision
when to repaint the tank. The Comptroller called as its witness the purchasing manager for GATX,
Frances Yvonne Moore, who agreed with Mr. Muyskens that several variables affect whether a tank
is repainted. She also testified that the decision to paint a tank lies with the terminal manager, the
terminal engineer, and the maintenance manager. Ms. Moore described the company's tank
repainting as an on-going project, but one without a formal written policy or any documented
schedule.

 In addition, the Comptroller takes issue with appellant's characterization of Mr.
Muyskens's testimony and notes that he contradicted GATX's earlier assertions that the tanks are
repainted every ten years "whether they need it or not." At trial, Mr. Muyskens acknowledged that
the tanks are actually repainted on an as-needed basis, depending on the various factors that the
company takes into account. The Comptroller relies on several of its previous decisions which hold
that repainting on an as-needed basis does not constitute scheduled work.

 As additional evidence, the Comptroller notes that GATX classifies its maintenance
projects as either (1) base plant maintenance or (2) other maintenance projects. Base plant projects
include maintenance that is routine and that has consistent year-to-year expenses. One example
includes soil sterilization at the facilities. Maintenance projects, on the other hand, include services
that are performed regularly but not necessarily daily, monthly, or quarterly. Ms. Moore testified that
the expenses associated with these "special projects" are not consistent because of variables such as
the size and the number of tanks involved. Ms. Moore testified that tank repainting is classified in
the second category.

 Based on our review of the record, the evidence supports the trial court's failure to
find that the repainting activities at issue are scheduled and periodic. To overcome the presumption
that repainting is a taxable service, GATX was required to "substantiate by way of maintenance
schedules or work orders or other evidence that the services meet the definition" of maintenance on
real property. See 34 Tex. Admin. Code § 3.357(c)(2). Such evidence is necessary to show that the
work was not done on an as-needed or as-recommended basis. Tex. Comptroller of Pub. Accounts,
Taxpayer Hearing on Disputed Audit, Docket No. 30,908. GATX failed to make this showing;
indeed, the record is replete with evidence that indicates that the tanks are repainted only as needed. 

 The decision to repaint a tank is largely made at the discretion of GATX managers 
and not by strictly objective standards. The tanks are not placed on arbitrary maintenance schedules. 
Subjective factors, independent of the condition of the paint, play a significant role in determining
the frequency of repainting the tanks. Moreover, the work is not done periodically as that term has
been interpreted in real property services cases. GATX has no written document or formal policy
outlining the frequency of tank repainting. The only "period" GATX points to is the average
duration of a paint job in the Gulf Coast area; the average lifetime of a paint job, however, is not
evidence that GATX actually schedules and paints its tanks at ten-year intervals. (7)

 Given this evidence, reasonable minds could reach differing conclusions as to
whether the tank repainting at the GATX facility constitutes periodic and scheduled maintenance
under Rule 3.357. Having found that more than a scintilla of evidence supports the failure to find
that the tank repainting is maintenance, we find that GATX failed to rebut the presumption that
repainting is repair or remodeling. We therefore uphold as legally sufficient the finding that the
manner in which GATX repaints its tanks is a taxable activity. See Crye, 907 S.W.2d at 499. 
Furthermore, based upon our review of the record in its entirety, the trial court's finding is not so
contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong and
manifestly unjust. See Croucher, 660 S.W.2d at 58. As the trial court's finding is both legally and
factually sufficient, we overrule appellant's first issue.


II. Installation of Vapor Recovery Equipment

 In its second issue, GATX contends that the construction done to comply with federal
environmental regulations constitutes non-taxable new construction, not taxable modification or
restoration. Mr. Muyskens testified that the purpose of a vapor recovery system is to collect vapors
that are emitted when the petroleum and petrochemical products are transported between the loading
vehicle and the tanks. According to his testimony, vapors are displaced as the tank fills with liquid. 
The recovery system collects the vapors and conveys them to an incinerator or "flare" which burns
the vapors to prevent their absorption into the atmosphere. Federal and state regulations that were
implemented in 1990 required GATX to modify its recovery of vapors. After GATX installed
equipment to meet the new mandates, the Comptroller assessed taxes on the cost of the services as
repair or remodeling.

 At trial, the Comptroller argued that the work came within the definition of
"remodeling or modification," which is a category of taxable services under Rule 3.357. See 34 Tex.
Admin. Code § 3.357(a)(8). The rule defines the category as follows:


Remodeling or modification--To make over; rebuild, replace, or upgrade existing
real property. However, the replacement of an item within an operating and
functioning unit in accordance with paragraph (4) of this subsection ["maintenance"]
is not taxable remodeling or modification. Finish out work performed after initial
finish out has been done is remodeling even though the improvement has not been
occupied. An example would be a shopping complex completely finished by the
developer prior to renting to tenants. A prospective tenant wants a different color
scheme before taking possession. The repainting by the developer is remodeling. 



Id. (emphasis added). The Comptroller specifically argued that the new vapor recovery and metering
equipment fit the description of an upgrade or rebuild. GATX responded that the work instead was
new construction as defined by section (a)(5) of the rule. See id. § 3.357 (a)(5). That section reads
as follows:


New construction--All new improvements to real property including initial finish out
work to the interior or exterior of the improvement. An example would be a multiple
story building which has only had its first floor finished and occupied. The initial
finishing out of each additional floor prior to initial occupancy will be considered
new construction. New construction also includes the addition of new footage to an
existing structure. 



Id. 

 The issue at trial was whether the work was a taxable upgrade or rebuild, as urged by
the Comptroller, or new construction as urged by GATX. 

 After hearing the evidence, the trial court made the following findings of fact:



 GATX's conversion from an "open" loading system to a "closed" loading system
and the related electrical and metering work made over, rebuilt, replaced and
upgraded existing real property improvements.

 GATX's conversion from an "open" loading system to a "closed" loading system
and the related electrical and metering work was not new construction. (8)




The trial court determined that GATX had failed to meet its burden and concluded that the
conversion from an "open" to a "closed" loading system was a repair and remodeling activity, 
subject to taxation. GATX challenges the evidentiary support in the record for the underlying
findings of fact to support this conclusion.


The Evidence at Trial

 At trial, GATX introduced photographs of the tank farm to show the appearance of
the area before and after installation of the additional equipment. GATX presented as its only
witness Mr. Muyskens, who was the initial project manager for the installation of the new metering
and vapor recovery equipment. He testified regarding the construction project, its purpose, and its
effect on other facets of the tank farm.

 Mr. Muyskens described the vapor collection system at the facility prior to 1992 as
an incinerator with a "vapor header" that went to three truck racks to which vapor hoses were
connected. To comply with governmental regulations, GATX replaced the old undersized
incinerator and constructed a new flare. GATX also put new hoses on each truck rack. As a result
of the new hoses and other changes, the delivery of the liquid from the loading vessel to the tanks
was accomplished by a completely sealed process to prevent the escape of vapors.

 According to Mr. Muyskens, the new closed collection system required GATX to
change the way it measured products loaded into the tanks. Prior to 1992, a man would stand on top
of the loading vessel and put a graduated stick into the tank opening. Mr. Muyskens explained that
as the liquid was filling up the tank, the man would look at the stick to gauge how much liquid was
in the container and when to stop the loading process. After sealing the opening on top of the tank,
GATX had to install a metering device to gauge the amount of liquid entering the tank; this device
was connected to a flow computer. To emphasize the scale of the installation, Mr. Muyskens
testified that where there had been only "dirt" before, a concrete slab now stood on which the flare
and new piping were installed. He also testified that "there was more square footage of flare . . . of
piping . . . of equipment . . . [and] of blowers" and that "cubic footage" was added.

 The Comptroller insisted that the new recovery system and metering device
constituted an "upgrade [to] existing real property." See 34 Tex. Admin. Code § 3.357(a)(8). 
During cross-examination, Mr. Muyskens acknowledged that the reason GATX installed the new
vapor recovery system was to comply with governmental regulations. This fact, in the Comptroller's
view, supported the finding that the work was a rebuild or upgrade legally required for GATX to
continue operations; it did not enhance the storage capacity of the tank farm or otherwise improve
the facility's business. On cross-examination, Mr. Muyskens acknowledged that while the product
is loaded differently, no new loading spots were added, and the same amount of product is loaded
as before. The Comptroller emphasized that while GATX had modified the way in which it delivers
its product into the tanks to more efficiently collect vapors, because the same amount of product was
loaded, the work could only be classified as an upgrade.

 In a previous decision of the Comptroller cited by GATX, the replacement of old
equipment with new was held not to constitute new construction, but was classified as an upgrade
or remodeling. See Tex. Comptroller of Pub. Accounts, Taxpayer Hearing on Disputed Audit,
Docket No. 29,296 (Feb. 8, 1994) (Comptroller's final decision amending audit). Similarly, a
decision cited by the Comptroller held that an electric utility company's construction of a new
transmission line incorporating some new equipment with pre-existing equipment was remodeling. 
See id. Docket No. 27,509 (Jan. 20, 1993) (Comptroller's final decision upholding audit as
amended). That decision concluded that because the end result was a rebuilt structure that continued
to function as an electric power line, albeit at increased capacity, the work was taxable remodeling. 
See id.

 Previously, the Comptroller has ruled that the installation of a more efficient vapor
recovery system at a gas station was an upgrade or modification to real property rather than new
construction. See id. Docket No. 36,044 (July 29, 1998) (Comptroller's final decision upholding
deficiency as indicated in audit). An accompanying finding of fact to that administrative decision
noted that while the new system increased the amount of collected vapors, it did not improve the
principal business of the gas station, i.e., the dispensing of fuel from the pump to customers' cars. 
See id. The decision concluded that the installation should be viewed as a modification and upgrade
because it modified the manner in which the fuel was dispensed but did not otherwise change the
station's business. Id. (9)

 Based on the record, previous decisions, and the unchallenged definitions contained
in Rule 3.357, we find that the evidence is both legally and factually sufficient to support the trial
court's finding that the work at issue was an upgrade or rebuild and not new construction. There is
more than a scintilla of evidence to support the finding. See Burroughs Wellcome Co., 907 S.W.2d
at 499. Moreover, the finding is not so contrary to the overwhelming weight of the evidence as to
be clearly wrong and unjust. See Cain, 709 S.W.2d at 176.

 GATX also failed to meet its burden that the installation fell within the exception for
new construction. The court found that the work did not constitute new construction under Rule
3.357. GATX challenges the sufficiency of the evidence to support this finding. GATX argues that
the extensive nature of the work done to comply with the environmental standards demonstrates that
this was more than an upgrade, contrary to the trial court's finding. It also contends that the
additional equipment now in place constitutes additional square footage as envisioned by the
definition of new construction. That definition, however, speaks in terms of the addition of "new
footage to an existing structure." See 34 Tex. Admin. Code § 3.357(a)(5) (emphasis added). This
phrase contemplates adding a new room to an existing building, not the addition of new equipment. 
See Tex. Comptroller of Pub. Accounts, Taxpayer Hearing on Disputed Audit, Docket No. 31,904.

 GATX cites Docket No. 31,904 for the proposition that the installation of a stamping
press at a facility was new construction because it added new footage to an existing structure. The
decision does not support this view. The facts of that case established that to house new equipment,
the taxpayer created a sixteen by sixteen foot concrete room, approximately ten feet below the
ground floor of an existing building. The decision states that "[t]his new room constituted 'the
addition of new footage to an existing structure.'" Id. (emphasis added). It was the new room, not
the installation of new equipment, that constituted additional footage and hence met the definition
of new construction. The additional footage of equipment and of the concrete slab on which it was
mounted at the tank farm is distinguishable; it did not create additional space as did the underground
room.

 Another decision on which GATX relies is likewise distinguishable. See id. Docket
No. 29, 296. There, an underground pit was dug so that a scale could be installed at the taxpayer's
lime-mining site where no scale had previously existed. Id. The decision stated that


the initial underground installation of the scale, here, constitutes "the addition of new
footage to an existing structure." That is to say, just as the attic built onto the top of
the flat-roofed structure created additional footage in Hearing #27,223, so also does
this underground installation create new footage for the Petitioner's lime mining
site--exactly as a new basement would do for a commercial building.



Id. Again, the facts of the decision can be distinguished: the pit, like the underground room, new
basement, or new attic, constituted additional space to hold the scale. The Comptroller's decisions
make clear that additional footage to an existing structure contemplates something more than the
replacement or addition of equipment.

 An appellant attacking the legal sufficiency of an adverse finding on an issue on
which it had the burden of proof at trial must demonstrate on appeal that there is no evidence to
support the finding and that the evidence conclusively established all vital facts in support of the
contrary finding. Sterner, 767 S.W.2d at 690; Holley, 629 S.W.2d at 696. There is evidence in the
record to support the court's failure to find that the installation of the new vapor recovery system was
new construction under Rule 3.357(8). Moreover, the court's failure to find is not so contrary to the
overwhelming weight and preponderance of the evidence as to be clearly wrong and manifestly
unjust. See Cain, 709 S.W.2d at 176. Therefore, we conclude that the trial court's failure to find
that the installation constituted new construction is both legally and factually sufficient. 
Accordingly, we overrule appellant's second issue.


CONCLUSION

 Because the evidence is legally and factually sufficient to uphold the trial court's
denial of the disputed claims for a refund of sales tax, we affirm the judgment.



 

 Bea Ann Smith, Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Yeakel

Affirmed

Filed: May 23, 2002

Publish

1.   The attorney general is a necessary party to a taxpayer suit. Tex. Tax Code Ann. § 112.053
(West 2001). The interests of the Comptroller and the Attorney General coincide in this cause. 
Therefore, we will refer to appellees as the Comptroller for convenience.
2.   GATX filed two separate suits which were consolidated for trial and disposition. The
parties stipulated that GATX was entitled to recover a refund of $64,967.31 in sales taxes paid for
tank cleaning and vacuum truck services from 1989 to 1991 and a refund of $142,944.22 in City of
Houston sales taxes paid from 1989 to 1992, plus statutory interest pursuant to sections 112.060 and
112.155 of the tax code. See Tex. Tax Code Ann. §§ 112.060, .155.
3.   The trial court's conclusions of law include number thirty-one: "The application and
validity of Comptroller Rule 34 Tex. Admin. Code § 3.357 has not been contested and the rule
applies to the facts of this case." The findings of fact include number twenty-five: "GATX does not
contest the application or validity of 34 Tex. Admin. Code § 3.357."
4.   Moreover, the cases on which GATX relies are distinguishable as each involved patently
legal determinations. See, e.g., United Servs. Auto. Ass'n v. Keith, 970 S.W.2d 540, 541-42 (Tex.
1998) (discussing whether plaintiff can recover on a "bystander" cause of action); Richey v.
Brookshire Grocery Co., 952 S.W.2d 515, 518 (Tex. 1997) (discussing probable cause determination
in a malicious prosecution case); Wise v. Complete Staffing Servs., Inc., 56 S.W.3d 900, 902 (Tex.
App.
--Texarkana 2001, no pet.) (discussing existence of duty in negligent hiring case).
5. [5] These decisions are available to the public. See Tex. Gov't Code Ann. § 2001.004(3)
(West 2000) ("agency shall . . . index, cross-index to statute, and make available for public
inspection all final orders, decisions, and opinions"). The decisions are relevant to show the
Comptroller's interpretation of its rules. See Southwest Airlines Co. v. Bullock, 784 S.W.2d 563,
567 (Tex. App.--Austin 1990, no writ) (relying in part on what is now section 2001.004(3) to
conclude that in an appropriate case the Comptroller's decisions are admissible as official
interpretations of the agency's own rules).
6.   Mr. Muyskens now holds this position with Kinder Morgan Terminals, which was formerly
GATX Terminals in Houston.
7.   We note that there was testimony regarding an industry standard published by the American
Petroleum Institute that governs some types of maintenance. The testimony is conflicting and
unclear; as such it does not provide support for either party's position and we do not rely on it.
8.   Rule 3.357 separately defines taxable repairs. See 34 Tex. Admin. Code § 3.357(a)(9)
(2001). We note that the trial court made findings of fact that the converted system and metering
device were repairs as defined by the rule. We do not address these findings of fact, however, as the
parties have directed their arguments on appeal to the court's finding that the services were an
upgrade as defined by the rule.
9.   GATX points out that the Comptroller's decision in Tex. Comptroller of Pub. Accounts,
Taxpayer Hearing on Disputed Audit, Docket No. 36,044 (July 29, 1998) (Comptroller's final
decision upholding deficiency as indicated in audit) was reversed on appeal to the district court and
urges this Court to view the district court's decision as authority. We acknowledge that the
Comptroller's decision in Docket No. 36,044 was overturned on appeal; the case remains helpful for
our purposes merely as a reflection of the Comptroller's previous interpretation of its rule. We are
not bound by a decision of a district court but only by courts of superior jurisdiction. See 16 Tex.
Jur. 3d Courts § 141 (1997).